PEOPLE v LAWTON

PEOPLE v CANNON

Docket Nos. 121200, 130998. Submitted June 17, 1992, at Detroit.
    Decided October 19, 1992, at 9:40 A.M. Leave to appeal sought.

Marcus Lawton and Wilbert E. Cannon, in separate trials in the
    Detroit Recorder's Court, Prentis Edwards, J., each were con-
    victed of felonious assault, three counts of assault with intent
    to commit murder, and possession of a firearm during the
    commission of a felony. They appealed, and the appeals were
    consolidated.

The Court of Appeals *held:*

1. The trial court did not err in excusing Cannon from
testifying as a subpoenaed witness for the defense in Lawton's
trial. Cannon invoked his Fifth Amendment privilege against
compelled self-incrimination. Any questioning of Cannon, under
the circumstances of this case, would have tended to incrimi-
nate him.

2. Because Lawton did not request the assistance of the
prosecutor in locating a certain res gestae witness, the prose-
cutor was not required under MCL 767.40a; MSA 28.980(1) to
help in locating the witness. Regarding other res gestae wit-
nesses, the trial court did not err in determining that the
prosecutor had made a diligent, good-faith effort to produce
them as required by the statute.

3. The trial court did not abuse its discretion in denying
Lawton's request for a continuance to allow another codefen-
dant to testify on his behalf after the codefendant's release
from a hospital. The asserted ground for a continuance was
inadequate in light of the trial court's reasonable belief that
the codefendant would not surrender his privilege against
compelled self-incrimination in order to exonerate Lawton.

REFERENCES

Am Jur 2d, Appeal and Error §§ 541, 555, 821, 838, 883; Assault
    and Battery §§ 49-51; Criminal Law §§ 167, 839, 774, 1010.

Right of accused in state courts to inspection or disclosure of
    evidence in possession of prosecution. 7 ALR3d 8.

4. There was sufficient evidence to support Lawton's conviction of felonious assault.

5. Lawton's convictions of assault with intent to commit murder were supported by sufficient evidence.

6. The trial court, in instructing the jury at Cannon's trial, accurately stated the law with respect to aiding and abetting.

7. All of Cannon's allegations of prosecutorial misconduct during closing argument are without merit. None of the alleged misconduct deprived Cannon of a fair and impartial trial.

8. There was sufficient evidence to convict Cannon as an aider and abettor of felonious assault and assault with intent to commit murder.

9. Cannon, by not moving for a new trial, failed to preserve for appeal the issue of prejudice allegedly resulting from the striking of an endorsed witness from the witness list. In any event, good cause was shown for the witness' deletion, as allowed under MCL 767.40a(4); MSA 28.980(1)(4).

Affirmed.

1. CRIMINAL LAW — RES GESTAE WITNESSES.

The purpose of requiring a prosecutor to list all known res gestae witnesses is to notify the defendant of the existence of the witnesses; if the defendant requires the prosecutor's assistance in producing res gestae witnesses, the prosecutor must make a diligent, good-faith effort to produce them (MCL 767.40a; MSA 28.980[1]).

2. CRIMINAL LAW — RES GESTAE WITNESSES — APPEAL.

Whether a prosecutor has made a diligent, good-faith effort in assisting a defendant in the production of a res gestae witness involves a factual determination by the trial court, whose ruling will not be reversed on appeal absent clear error (MCL 767.40a; MSA 28.980[1]).

3. CRIMINAL LAW — CONTINUANCES — APPEAL.

The grant or denial of a continuance rests within the discretion of the trial court and reversal is mandated only where the trial court abuses its discretion and prejudice to the defendant results; an appellate court considers whether the defendant asserted a constitutional right, had a legitimate reason for asserting the right, had been negligent, and had requested previous adjournments.

4. CRIMINAL LAW — DUE PROCESS — SUFFICIENCY OF EVIDENCE.

An appellate court, in determining whether a conviction was

based on sufficient evidence, views the evidence in the light most favorable to the prosecution and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt.

5. CRIMINAL LAW — FELONIOUS ASSAULT.

The elements of the crime of felonious assault are: an assault, with a dangerous weapon, and with intent to injure or place a victim in reasonable fear or apprehension of an immediate battery (MCL 750.82; MSA 28.277).

6. CRIMINAL LAW — ASSAULT WITH INTENT TO COMMIT MURDER.

The crime of assault with intent to commit murder consists of an assault with the specific intent to commit murder that, if successful, would make the killing murder (MCL 750.83; MSA 28.278).

7. CRIMINAL LAW — AIDING AND ABETTING.

Three elements must be shown to support a finding that a defendant aided and abetted the commission of a crime: the crime charged was committed either by the defendant or some other person, the defendant performed acts or gave encouragement that aided and assisted the commission of the crime, and the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time of giving aid or encouragement (MCL 767.39; MSA 28.979).

8. PROSECUTING ATTORNEYS — PROSECUTORIAL MISCONDUCT.

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial.

9. CRIMINAL LAW — NONPRODUCTION OF ENDORSED WITNESSES — APPEAL.

A defendant who asserts prejudice from the nonproduction of an . endorsed witness must move for a new trial in order to preserve the issue for appeal.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Brian D. Marzec* and *Carolyn M. Breen,* Assistant Prosecuting Attorneys, for the people.

*Gerald S. Surowiec,* for Marcus Lawton.

*Craig A. Daly,* for Wilbert E. Cannon.

Before: JANSEN, P.J., and MICHAEL J. KELLY and CORRIGAN, JJ.

CORRIGAN, J. Marcus Lawton and Wilbert E. Cannon were each convicted in separate trials of felonious assault, MCL 750.82; MSA 28.277, three counts of assault with intent to commit murder, MCL 750.83; MSA 28.278, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Both were sentenced to one to four years for felonious assault and to two years for felony-firearm. Cannon was sentenced to eight to twelve years for each of the three counts of assault with intent to murder, while Lawton was sentenced to ten to twelve years for each of the same offenses. On their consolidated appeals as of right, we affirm.

Lawton was arrested and charged along with codefendant Kines Glover, but tried alone before a judge in June 1989. Glover's case was severed when he was seriously injured in a firebombing shortly before trial. When victim Reynard May arrived at Lawton's trial, he saw Cannon outside the courtroom and identified him as one of the shooters. Defendant Cannon was then arrested and tried by jury in December 1989.

On January 17, 1989, Reynard May and "James" or "J.D." were working on an automobile parked in front of the home of Reynard's brother on Dwyer Street in Detroit. A brown Ford Thunderbird drove up and parked behind them. Defendant Cannon was driving; Lawton and Glover were passengers. All three men left the car, displaying guns. Glover forced Reynard May to the side door of the house, while "James" fled. Lawton went into the back yard. Glover knocked on the door, and

Truman May, Reynard's brother, answered. When Truman saw the gun, he tried to slam the door shut, but it jammed on the gun barrel. Truman kicked the gun free and locked the door. Lawton ran to the side of the house, looked in the kitchen window, and began to shoot. Irene May, Truman's wife, took their six-year-old daughter, LaTasha, into a bedroom and hid on the floor.

As Truman moved through the house to the front room, Lawton and Glover followed outside. They began shooting as they moved to the front of the house. Irene and LaTasha hid in a bedroom closet, but LaTasha was struck when two bullets penetrated the walls.

Lawton offered an alibi defense. His witnesses testified that he and James Conte had been together during the relevant time as Conte took delivery of a pickup truck. A witness from the dealership, however, could say only that he was "pretty sure" that Lawton was with Conte for a portion of that time. However, Conte was discredited because he had apparently offered Truman May $5,000 to drop the charges against Lawton.

At Lawton's trial, on a separate record, Glover's counsel said that Cannon's testimony could exculpate Lawton. Cannon, after consulting with appointed counsel, invoked his right against compelled self-incrimination and was excused. At Cannon's trial, Glover's counsel testified that Cannon admitted driving the car, but claimed that only Lawton and Glover had fired shots in response to gunfire from inside.

### *LAWTON*

#### 1. CANNON TESTIMONY

Defendant Lawton subpoenaed Cannon as a de-

fense witness. Lawton claims that the trial court erroneously excused Cannon, a res gestae witness, when he asserted his right against self-incrimination without submitting Cannon to any further questioning. We disagree.

Under any version of the res gestae witness law, MCL 767.40a; MSA 28.980(1), the prosecutor's duty has never extended to calling or listing accomplices. *People v O'Quinn,* 185 Mich App 40, 45; 460 NW2d 264 (1990). The prosecutor had no duty to grant Cannon immunity so he could testify for defendant. Indeed, defendant made no such request below, so the issue is not squarely preserved. Moreover, contrary to defendant's apparent suggestion, defendant lacks power to immunize witnesses. He cannot compel a grant of immunity. *People v Dyer,* 425 Mich 572, 583; 390 NW2d 645 (1986) (LEVIN, J., concurring); *People v Watkins,* 78 Mich App 89, 95; 259 NW2d 381 (1977).

Defendant seems to advocate such powers in reliance on the *Dyer* concurrence. Other authorities raise serious doubts about the views expressed in *Dyer.* See, e.g., *United States v Doe,* 465 US 605, 616-617; 104 S Ct 1237; 79 L Ed 2d 552 (1984); *Pillsbury Co v Conboy,* 459 US 248; 103 S Ct 608; 74 L Ed 2d 430 (1983); *United States v Angiulo,* 897 F2d 1169, 1190-1193 (CA 1, 1990); *United States v Pennell,* 737 F2d 521 (CA 6, 1984).

Nor was the trial court required to probe Cannon further on the propriety of asserting the Fifth Amendment privilege. Once Cannon exercised the privilege, defendant did not request further probing. He cannot now complain of the court's procedure in so sensitive a matter, where testimony having even a possible tendency to incriminate is protected against compelled disclosure. *Hoffman v United States,* 341 US 479; 71 S Ct 814; 95 L Ed 1118 (1951). Any statement during such question-

ing might tend to incriminate Cannon. The court already knew that he had been named as a participant. On this record, the decision to excuse Cannon without further interrogation was the only proper course.

## 2. THE "MISSING WITNESS"

Defendant Lawton also claims that the prosecutor was required to produce "James" or "J.D.," the man who apparently fled the scene. At an evidentiary hearing, both sides stipulated that the existence of "James" was unknown to them before Reynard May's reference to him at trial. Under the amended statute, the defendant must first request the prosecution to assist in locating res gestae witnesses. The purpose of the "listing" requirement is merely to notify the defendant of the witness' existence and res gestae status. *People v Calhoun,* 178 Mich App 517, 523; 444 NW2d 232 (1989). At the evidentiary hearing, defense counsel conceded that defendant had never requested the production of "James." Accordingly, the prosecutor had no duty to aid in producing "James."

Defendant further suggests that the police efforts to identify additional witnesses did not satisfy the "reasonableness" standard of the statute. A police investigator testified that Reynard May had not mentioned "James" during questioning. Although the investigator did not ask who else was there, he did canvass the area for possible witnesses. An investigating officer need not do "everything possible" to identify a potential witness. *People v DeMeyers,* 183 Mich App 286, 292; 454 NW2d 202 (1990), citing *People v Cummings,* 171 Mich App 577, 585; 430 NW2d 790 (1988). Even where the prosecution does know of a potential witness, the test is whether it has made a

"diligent, good-faith effort" to produce that witness. *People v Conner,* 182 Mich App 674, 681; 452 NW2d 877 (1990). A trial court's determination of due diligence will not be overturned on appeal absent an abuse of discretion. *Id.* That determination is a factual matter, and the court's findings will not be reversed unless clearly erroneous. *People v Wolford,* 189 Mich App 478, 484; 473 NW2d 767 (1991).

On the record before us, the trial court properly found the prosecution's efforts to locate witnesses were not unreasonable.

### 3. REQUEST FOR CONTINUANCE

Defendant also contends that the trial court should have continued the trial for codefendant Glover's allegedly exculpatory testimony. Glover, hospitalized with extensive burns, was not competent to testify.

We review a denial of a continuance for abuse of discretion. *People v Davis,* 343 Mich 348, 361; 72 NW2d 269 (1955). Some factors to be considered include whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments. *People v Williams,* 386 Mich 565, 578; 194 NW2d 337 (1972). Defendant must also demonstrate prejudice. *People v Sinistaj,* 184 Mich App 191, 201; 457 NW2d 36 (1990).

The trial court did not abuse its discretion. Although Lawton had asserted his right to call witnesses, had not been negligent, and had not requested previous adjournments, his offer of proof that defendant Glover would exonerate him was inadequate. Glover, a charged codefendant, enjoyed Fifth Amendment protection. He was obvi-

ously not present to speak for himself. The court had no reason to believe that Glover would surrender his privilege in order to exonerate his codefendant. The court properly denied a continuance on the inadequate grounds furnished.

### 4. FELONIOUS ASSAULT

Lawton next contends that the evidence was insufficient to convict him of felonious assault of Reynard May. A challenge to sufficiency tests whether all the evidence, considered as a whole, justifies submitting the case to the trier of fact. *People v Hampton,* 407 Mich 354, 367; 285 NW2d 284 (1979). On review, this Court views the evidence in the light most favorable to the prosecution and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Metzler,* 193 Mich App 541, 546-547; 484 NW2d 695 (1992).

The elements of felonious assault, MCL 750.82; MSA 28.277, are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable fear or apprehension of an immediate battery. *People v Wardlaw,* 190 Mich App 318, 319; 475 NW2d 387 (1991); *People v Sanford,* 402 Mich 460, 479; 265 NW2d 1 (1978). The intentional discharge of a firearm at someone within range is an assault, *People v Johnson,* 54 Mich App 303, 304; 220 NW2d 705 (1974):

> There would rarely be a conviction if a criminal's intent had to be confessed or proven directly by a witness. Intent, like any other fact, may be proven indirectly by inference from the conduct of the accused and surrounding circumstances from which it logically and reasonably follows.

Lawton and Glover approached Reynard May with guns drawn and forced him from the parked car to the back door of his brother's home. A rational trier of fact could find (1) an assault because Reynard May was put in "reasonable fear or apprehension of an immediate battery" and (2) the use of a dangerous weapon. Further, defendant's intent to place May in fear of an immediate battery is properly inferred from these circumstances.

### 5. ASSAULT WITH INTENT TO MURDER

Lawton also argues the evidence was insufficient to convict him of the three counts of assault with intent to commit murder, MCL 750.83; MSA 28.278. The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v Bush*, 187 Mich App 316, 327; 466 NW2d 736 (1991). Circumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of the offense. *People v Drayton*, 168 Mich App 174, 176; 423 NW2d 606 (1988). The intent to kill may be proved "[by] inference . . . from any facts in evidence . . . ." *Id.* at 177, citing *Roberts v People*, 19 Mich 401 (1870).

Defendant claims that because he had no intent to kill Irene and LaTasha May, the convictions of assault with intent to murder should be vacated. We reject his contention because intent may be transferred:

> Defendant claims that the doctrine is based on an impermissible presumption of intent. This is not true. Before defendant can be convicted it

must first be shown that he had the intention to cause great bodily harm to someone. Merely because he shot the wrong person makes his crime no less heinous. It is only necessary that the state of mind exist, not that it be directed at a particular person. [*People v Lovett,* 90 Mich App 169, 172; 283 NW2d 357 (1979).]

Defendant Lawton may have intended to assault only Truman May. His ignorance of Irene and LaTasha May's presence makes his crime "no less heinous." The evidence on these counts was sufficient.

### CANNON

#### 1. JURY INSTRUCTIONS CONCERNING AIDING AND ABETTING

Defendant Cannon first claims error in the jury instructions regarding aiding and abetting the felonious assault and the assaults with intent to murder. He specifically objects to the instruction regarding the defendant's knowledge of the principal's intent.

Because defendant did not object, relief will be granted only for manifest injustice. *People v Kelly,* 423 Mich 261, 272; 378 NW2d 365 (1985); see also, e.g., *People v Burgess,* 153 Mich App 715, 726; 396 NW2d 814 (1986). We find no "manifest injustice" because the jury instructions correctly presented the law of aiding and abetting.

The trial court said:

All persons who aid or assist in the commission of a crime are as liable as if they had directly committed the crimes and may be convicted of the principal offense or as an aider and abettor. Before you may convict, you must be convinced of the following beyond a reasonable doubt. First, that

the crimes charged must have been committed either by the defendant or some other person. Second, that the defendant must have performed acts or given encouragement which aided or assisted the commission of those crimes either before or at the time of the commission of the crimes. Third, that the defendant must have intended the commission of the crimes charged or have known that the other person intended its commission at the time of giving the aid or encouragement.

*Kelly, supra,* held that a defendant could be convicted as an aider and abettor in a felony murder "if the aider and abettor *participates in a crime with knowledge of his principal's intent* to kill or to cause great bodily harm . . . ." 423 Mich 278 (emphasis supplied). See also, e.g., *People v Flowers,* 191 Mich App 169, 178; 477 NW2d 473 (1991); *People v Genoa,* 188 Mich App 461, 463; 470 NW2d 447 (1991).

Michigan does not distinguish between principals and accessories for purposes of culpability. MCL 767.39; MSA 28.979; *Genoa, supra* at 463. Where one acts intentionally in pursuit of a common plan, liability may be established on agency principles. *Flowers, supra* at 178, citing *People v Aaron,* 409 Mich 672, 731; 299 NW2d 304 (1980). "Aiding or abetting" includes all forms of assistance. The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime. *People v Usher,* 121 Mich App 345, 350; 328 NW2d 628 (1982).

The trial court's instructions correctly summarized the law. Indeed, the evidence was sufficient to convict defendant as one who actually intended the commission of the crimes. See *Kelly, supra* at 280 (evidence so overwhelming that no injustice occurred).

## 2. PROSECUTORIAL MISCONDUCT

Cannon next argues that prosecutorial misconduct in closing argument deprived him of a fair trial. This Court evaluates the prosecutor's remarks in context to determine whether the defendant was denied a fair and impartial trial. *People v Mack,* 190 Mich App 7; 475 NW2d 830 (1991). See also, e.g., *People v Saunders,* 189 Mich App 494, 496; 473 NW2d 755 (1991). Having done so, we find Cannon's allegations without merit.

Cannon first complains that the prosecutor asked why he did not immediately report the shooting instead of waiting two months and telling his story to a codefendant's lawyer. He argues she impermissibly commented on his failure to testify. *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973). *Bobo,* however, is limited to "[the] right to remain silent *in the face of accusation,*" *id.* at 359 (emphasis supplied). *People v Collier,* 426 Mich 23, 31; 393 NW2d 346 (1986). *Bobo* is not controlling in cases where the "silence" occurred before any police contact. *Id.* See also *People v Cetlinski,* 435 Mich 742, 746; 460 NW2d 534 (1990); *People v Alexander,* 188 Mich App 96, 105; 469 NW2d 10 (1991). Moreover, *Collier, supra,* approved prosecutorial argument that "if defendant's version [of the events in question] were true he would have reported the crime." 426 Mich 35.

Prosecutorial arguments are also considered in light of defense arguments. See *People v Sharbnow,* 174 Mich App 94, 100-101; 435 NW2d 772 (1989); *People v Redfern,* 71 Mich App 452, 454; 248 NW2d 582 (1976). In this case, defense counsel complained that "the prosecution has the opportunity to speak to you twice. . . . This is the only chance that we will have to present our closing statement. . . . [W]e cannot get up again to respond . . . ."

During rebuttal, the prosecutor referred to "the rule this system goes by." She then contrasted defense counsel's complaints about rebuttal with her restraint in not complaining about the presumption of innocence and defendant's right not to take the stand. These comments about the system are not violative of *Bobo, supra.* Indeed, the jury was clearly charged regarding the defendant's right not to testify.

Next, defendant's closing argument described his appearance at Lawton's trial by saying he "was sitting in court ready to go and not be arrested." The prosecutor objected, saying, "That is not how it happened. . . I would like to be able to put in something because that is a lie." This remark does not warrant reversal. "[I]n the haste and heat of a trial it is humanly impossible to obtain absolute perfection, and of necessity some allowance must be made in determining whether impromptu remarks are to be held prejudicial." *People v De-Lano,* 318 Mich 557, 569; 28 NW2d 909 (1947), citing *People v Burnstein,* 261 Mich 534, 538; 246 NW 217 (1933). Reynard May testified that he had seen "Mr. Cannon sitting outside the trial room" and told the investigating officer. On cross-examination, counsel repeated that Cannon had been "just sitting on a bench in the hallway" and that the witness saw Cannon again that day when he "walked by." The prosecutor's characterization accorded with the evidence. The jurors were also instructed that counsel's arguments are not evidence and that they should consider only the evidence. Cannon's right to a fair trial was not compromised.

The other alleged examples of prosecutorial misconduct, to which defendant failed to object, do not warrant reversal. Cannon claims the prosecutor "improperly argued to the jury that the defendant

wanted a conviction on a lesser charge than the jury was being instructed on," implying that Cannon was "conceding [guilt] but wanted a break." We do not draw the same conclusion from the prosecutor's statements.

Cannon also complains that the prosecutor said, "Twelve of you are going to have to go back there and decide. All defense counsel has to do is confuse one of you and they are home free." The prosecutor, however, immediately continued, "I am telling you, ladies and gentlemen, do not get confused. Do not mess up. Do not forget your common sense." The prosecutor had made repeated references to the jury's "common sense" throughout her closing argument. The prosecutor's remarks must be read as a whole. These comments are not "disparaging," much less prosecutorial misconduct.

### 3. SUFFICIENCY OF THE EVIDENCE

Cannon also argues the insufficiency of evidence of felonious assault and assault with intent to murder. Sufficient testimony was presented to convict Cannon as an aider and abettor. By his own admission to Glover's counsel, Cannon had driven to the scene. He denied any knowledge or criminal intent. The question of Cannon's knowledge and intent was for the jury. Various witnesses testified that the driver of the car also fired a gun. Defense counsel highlighted various testimonial contradictions, but the jurors apparently chose to believe the witnesses who implicated defendant. Their conclusion was rational and fully supported by the evidence.

### 4. STRIKING OF WITNESS

Cannon finally claims that the court erroneously

struck the name of endorsed witness Felicia McGee, who was unavailable because she had begun labor and delivery of her baby the previous day. (The court also refused to allow the prosecution to present McGee's testimony from the Lawton trial.)

MCL 767.40a(4); MSA 28.980(1)(4) allows an endorsed witness to be deleted "at any time upon leave of the court and for good cause shown." Striking a witness in these circumstances is good cause. A defendant who asserts prejudice because a witness is struck must preserve the issue by moving for a new trial. *People v Jackson,* 178 Mich App 62, 66; 443 NW2d 423 (1989). Defendant did not satisfy this requirement. His motion for a new trial did not raise this issue. Moreover, the trial court offered defendant the option of admitting McGee's earlier testimony containing the allegedly exculpatory evidence. However, defendant rejected the trial court's offer. We see no error.

Affirmed.