# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JUSTIN MILTON BELL,

Defendant-Appellant.

UNPUBLISHED
January 26, 2017

Nos. 328711; 329070
Wayne Circuit Court
LC No. 15-002172-01-FH;
        15-002170-01-FC

Before: BECKERING, P.J., and SAWYER and SAAD, JJ.

PER CURIAM.

A jury convicted defendant, Justin Milton Bell, for armed robbery, MCL 750.529, possession of a short-barreled shot gun, MCL 750.224b(1), and possession of a firearm while committing a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced him to prison terms of 18 to 40 years for the armed-robbery, 3 to 5 years for possession of a short-barreled shotgun, and two years for felony-firearm. Defendant appeals by right these convictions and sentences in Docket No. 329070. In Docket No. 328711, defendant appeals by right his jury conviction for a second, separate charge of possessing a short-barreled shotgun, for which the trial court also sentenced him to 3 to 5 years' imprisonment. We consolidated these appeals for administrative purposes. *People v Bell*, unpublished order of the Court of Appeals, issued February 10, 2016 (Docket Nos. 328711, 329070). For the reasons set forth below, we remand to the trial court for the issuance of an amended judgment of sentence vacating one of defendant's sentences for possession of a short-barreled shotgun and for further proceedings consistent with the process set forth in *People v Lockridge*, 498 Mich 358, 398; 870 NW2d 502 (2015), *United States v Crosby*, 397 F3d 103 (CA 2, 2005), and *People v Steanhouse*, 313 Mich App 1, 46-49; 880 NW2d 297 (2015). We affirm the trial court in all other respects.

## I. PERTINENT FACTS

Defendant's convictions in these consolidated appeals arise from events that occurred on the night of February 20, 2015. At defendant's trial, Detroit Police Department (PD) Officer Brian Gibbings testified that he and his partner, Officer Michael Bridson, were on patrol near Wyoming Street and Grand River Avenue in Detroit when Gibbings observed defendant with "a long metal object in his left sleeve." When Gibbings turned around his patrol vehicle to investigate further, defendant fled. Gibbings and his partner followed footprints in the fresh snow to a vacant house, where Gibbings found a shotgun behind an old television stand. Bridson

-1-

testified that a third officer found defendant hiding in a closet on the first floor of the house, and that a pat down of defendant yielded $16 and a wallet that contained a Social Security card and other paperwork bearing the name "Larry Verse." The officers did not know at the time who Verse was, but learned shortly after defendant's arrest that Verse had been the victim of a recent, nearby armed robbery involving a shotgun.

Verse testified that on February 20, 2015, at approximately 8:00 p.m., he was walking on Wyoming Street near Grand River Avenue when he heard footsteps behind him, turned around, and saw a person with a shotgun wearing what appeared to be a ski mask. Verse said the person pointed the shotgun at him and told him that "this is a robbery, don't make him shoot." He further recounted that the assailant ordered him to go into an alley and to lie on the ground, and that the assailant took two of his three wallets, which contained his Social Security card, medical cards, and a spare house key, and $16 and change out of the third wallet.

Detroit PD Lieutenant Tharadrous White testified that he and Detective Anthony Smith interrogated defendant at approximately 2 a.m. on February 21, 2015, at the Detroit Detention Center. According to White, defendant did not appear to be injured or under the influence of narcotics or alcohol. White explained that he wrote down the questions he asked defendant and the answers defendant gave, and then had defendant review the document; after making one correction and adding a handwritten apology, defendant initialed the statement. White testified that defendant admitted that he had a shotgun while he was walking down Wyoming and that he ran from police. The witness said defendant also admitted that, before running from the police, he had seen a man who "looked as if he had a little money," so he "pulled out a shotgun and told him no one will get hurt if he just did what [defendant] said." White said that defendant explained that he made the man go to an alley and lie down, and then he took $10 to $15 and a wallet from him. White recounted that, in defendant's handwritten apology, defendant said he was sorry, that he understood he was wrong, that he had a baby on the way and was going through rough times, and that he never meant to hurt anyone. The information defendant gave in his statement regarding the armed robbery of Verse led White and Smith to interrogate him subsequently about a similar armed robbery that occurred in the same vicinity on January 24, 2015.[1] White said he assumed the interrogations were being recorded by audiovisual equipment and that the recordings would be stored for at least 30 days, but when he went to obtain copies of them approximately 14 days later, he was unable to locate them.

---

[1] The prosecutor charged defendant for the January armed robbery, and defendant's trial on these charges (first trial) preceded by two weeks his trial for the charges stemming from the armed robbery of Verse (second trial). A jury convicted defendant for armed robbery and felony-firearm for the January armed robbery, and the trial court sentenced him to terms of imprisonment of 18 to 40 years for the armed robbery, and two years for felony-firearm. Defendant appeals by right these convictions and sentences in Docket No. 328710. All three appeals were submitted together.

During his testimony, defendant admitted that he had a drug problem and acknowledged possessing a shotgun,[2] but denied robbing Verse. He said that he ran from the police because he was "paranoid" and did not know why they were "casing" him, and because he was scared of "police brutality or being shot for having a weapon." Regarding the money and wallet containing Verse's documents that police found on him, defendant explained that he had loaned his shotgun to a fellow crack addict earlier that evening, and that the addict had returned the gun to him around 9:00 p.m., at which time the addict gave him $15 and a wallet. Defendant said he was walking home from this exchange when he saw the police and ran. He further stated that he was injured and under the influence of cocaine and marijuana at the time of his arrest, and that he had no memory of his interrogation. He stated on cross-examination that he did not dispute that a portion of his "alleged" statement was written in his hand, but insisted that he did not recall writing it or making any of the comments about the robbery attributed to him in the statement.

Defendant offered a closing statement on his own behalf in which he sought to undermine the credibility of the police witnesses by arguing that, without a video recording of his interrogation, there was no proof that he had made the confession police attributed to him. He also sought to undermine the victim's credibility by drawing the jury's attention to how neither he nor his shotgun matched the victim's description of the assailant or his weapon. He attempted to undermine the credibility of witnesses further by pointing out the lapse of time between when Verse was robbed and defendant was arrested (which he said was approximately ninety minutes), and by stressing that police found only one wallet on him, when Verse testified that he usually carried three.

## II. ANALYSIS

## A. JURY INSTRUCTION PURSUANT TO MCL 763.9

Defendant first argues that trial counsel was constitutionally ineffective for failing to ask the trial court to instruct the jury that interrogations for major felonies must be recorded, MCL 763.8, and that jurors could consider the absence of such recording when evaluating the evidence in this case, MCL 763.9. Defendant raised the same issue in Docket No. 328710, for which the facts and the parties' arguments were the same as those presented in this case. Accordingly, we adopt for purposes of the present appeal the following analysis and conclusion that we set forth in our decision in Docket No. 328710:

> Whether defendant was entitled to a jury instruction is a question of law that we review de novo. See *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). MCL 763.8 states that a "law enforcement official interrogating an individual in custodial detention regarding the individual's involvement in the commission of a major felony shall make a time-stamped, audiovisual recording

---

[2] The parties stipulated that the shotgun fulfilled the statutory criteria that make a shotgun "short-barreled." MCL 750.222(*l*).

of the entire interrogation."[3]  Major felonies include felonies that are punishable by imprisonment for life or any term of years.  MCL 763.7(d).  Failure to record a major-felony interrogation does not preclude a police officer from testifying about the interrogation or the content of a statement.  MCL 763.9.  However, if the statutorily required recording is not available, "the jury shall be instructed that it is the law of this state to record statements of an individual in custodial detention who is under interrogation for a major felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement." *Id*.

It is undisputed that police interrogated defendant regarding his involvement in the commission of an armed robbery, that armed robbery is a major felony, and that they interrogated defendant in a room properly equipped with the necessary recording system.  Consequently, MCL 763.8 was applicable.  Therefore, because no recording was available for trial, the trial court should have instructed the jury pursuant to MCL 763.9 that a recording was mandatory and that it may consider the absence of a recording in evaluating the nature of defendant's statement.

Plaintiff argues that, because police testimony established that the recording equipment was not properly storing videos and that the recording of defendant's interrogation could not be accessed, the recording equipment was not "operational or accessible" as provided in MCL 763.11(3) or (4),[4] and that,

---

[3] An exception to this requirement occurs when the individual police are interrogating has objected to having the interrogation recorded, and the individual's objection is properly noted. MCL 763.9.  This exception does not apply in the instant case.

[4] MCL 763.11(3) and (4) directs that MCL 763.8 and 763.9, as well as other provisions of the statutory scheme, must be adhered to once the law enforcement agency acquires access to recording equipment, or within certain time periods after receiving funds for recording equipment.  Specifically, the provisions read as follows:

(3) Except as otherwise provided in subsection (4), law enforcement agencies shall implement [MCL 763.7 through MCL 763.10] and this section within 120 days after receiving funds under this section from the Michigan commission on law enforcement standards or acquiring access to audiovisual recording equipment as directed by the standards set forth by that commission.

(4) Notwithstanding subsection (3), a law enforcement agency shall comply with the provisions of the amendatory act that added this subsection within 60 days after the date the commission adopts the standards for audiovisual recording equipment required by this section if the law enforcement agency has audiovisual recording equipment that complies with those standards on that date, or within 60 days after the date the law enforcement agency subsequently obtains audiovisual recording equipment that complies with the adopted standards.

consequently, MCL 763.9 did not apply.[5]  We find this argument unpersuasive because it fails to consider the statutory scheme as a whole.  See *Mayor of the City of Lansing v Mich Pub Serv Comm*, 470 Mich 154, 168; 680 NW2d 840 (2004) (noting that a "law is not properly read as a whole when its words and provisions are isolated and given meanings that are independent of the rest of its provisions.").  Read in the context of the statutory scheme as a whole, the reference in MCL 763.8(1) to equipment that is "operational or accessible" clearly indicates equipment procured or possessed within the relevant timeframes, according to the cited conditions.  Once the agency has the mandated equipment, the equipment is operational and accessible for purposes of the statutory scheme, and the agency must follow the relevant provisions.  An agency is not exempt from the requirements of MCL 763.8 simply because its installed equipment later becomes inoperable or the recordings inaccessible.

Because the necessary recording equipment was operational and accessible for purposes of MCL 763.8, the police should have recorded and made available their interrogation of defendant.  In the absence of such a recording, defendant was entitled to the jury instruction mandated by MCL 763.9.  The trial court did not give this instruction, and trial counsel waived the court's error by expressly agreeing to the jury instructions as given.  See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (noting, "[w]hen defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver.").  Defendant claims on appeal that his counsel was ineffective for failing to handle properly the issue of the required jury instruction.

Because defendant did not raise this issue in the trial court, this Court's review is limited to errors apparent on the record.  *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).  To prevail in his claim of ineffective assistance of counsel, defendant must establish (1) that counsel's performance fell below an objective standard of reasonableness and (2) that the defendant was prejudiced because of counsel's performance.  *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012).  A prejudice showing means that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' "  *Id*., quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052, 2068; 80 L Ed 2d 674 (1984).

By waiving the trial court's error in failing to give the jury instruction to which defendant was entitled under MCL 763.9, and by failing to request an applicable jury instruction that would have allowed the jury to draw a negative

---

[5] MCL 763.8 applies only where "the law enforcement agency has audiovisual equipment that is operational or accessible as provided in section 11(3) or (4) or upon the expiration of the relevant time periods set forth in section 11(3) or (4), whichever occurs first."  MCL 763.8(1).

inference regarding the police's testimony about defendant's confession, defendant's trial counsel arguably performed below an objective standard of reasonableness. *Vaughn*, 491 Mich at 669. Nevertheless, defendant has not shown that he was prejudiced by this deficiency. *Id*. The record shows that defendant's trial counsel cross-examined several police witnesses extensively regarding their failure to secure a recording of the interrogation, and argued during his closing statement that jurors should view the police account of defendant's alleged confessions skeptically, given the absence of the mandated recording. Further, defendant testified at length to his inability to remember anything about his interrogation other than the means officers used to coerce a confession out of him. Between defendant's testimony and trial counsel's thorough cross-examination of police witnesses, defendant presented the jury with a coherent theory that evidence regarding the statement was unreliable, and that defendant's account of the interrogation was more credible than that of the police officers. Because the issue of the credibility of police accounts of defendant's confession was squarely before the jury, we cannot say that there is a reasonable probability of a different outcome had defendant's trial counsel requested an instruction pursuant to MCL 763.9. *Vaughn*, 491 Mich at 669.

## B. ADJOURNMENT

Defendant next argues that the trial court erred by denying his request to adjourn the trial. We disagree. We review a trial court's decision on a request to adjourn for an abuse of discretion. *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000). A trial court abuses its discretion "when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014).

As we explained in our decision in Docket No. 328710:

"[T]o invoke the trial court's discretion to grant a continuance or adjournment, a defendant must show both good cause and diligence." *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). " 'Good cause' factors include 'whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments.' " *Id*, quoting *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992); see also *People v Wilson*, 397 Mich 76, 81; 243 NW2d 257 (1976). In addition, the defendant must demonstrate prejudice because of the trial court's decision. *Coy*, 258 Mich App at 18-19.

On the first day of trial, defendant informed the court that he was not prepared for trial because he did not have the transcripts from his first trial,[6] his "discovery packet," his "paperwork," or Verse's testimony from the preliminary examination. Defense counsel gave

---

[6] I.e., the trial on charges stemming from the January 24, 2015 armed robbery.

defendant a copy of the charging document, stating that it had "all of the information," and said he would provide defendant with a copy of Verse's preliminary examination testimony prior to the start of testimony in this trial. The trial court explained to defendant that discovery for this trial was essentially the same as that for his first trial. Consequently, the only item remaining that defendant insisted he needed were the transcripts from the first trial. The trial court informed defendant that no one had ordered or prepared the transcripts, and that it would not adjourn the trial to wait for them.

Assuming for the sake of argument that defendant's request for the transcripts from his first trial constitutes good cause, and that waiting until the first day of his second trial to make that request is consistent with diligence, defendant has not demonstrated the prejudice necessary for us to conclude that the trial court abused its discretion by denying an adjournment.

Defendant implied that the transcripts contained "[a]ll the evidence that's been falsified and brought up in [the] courtroom," thus suggesting that he wanted to use the transcripts for impeachment purposes to undermine the credibility of the police witnesses and the victim. However, even without the transcripts, defendant placed the credibility of the prosecution's witnesses squarely at issue when his trial counsel cross-examined White regarding the unavailability of the statutorily required audiovisual recording of defendant's interrogation, and when defendant himself gave a closing argument attempting to persuade the jury of various presumed inconsistencies and incongruities in the prosecution's case. In his brief to this Court, defendant fails to demonstrate how he would have prepared differently for his defense had he had the transcripts. In sum, defendant provides neither evidence nor argument in support of his contention that he was prejudiced by the trial court's decision to move forward with the trial before he had obtained the transcripts from his first trial. Absent such showing, defendant cannot prevail on his claim that the trial court abused its discretion by failing to adjourn his trial. *Coy*, 258 Mich App at 18.

## C. USE OF JUDICIAL FACT-FINDING TO SCORE OFFENSE VARIABLES

Finally, defendant asserts that the trial court violated his Sixth Amendment rights by using judicial fact-finding to score offense variables (OVs) 1, 8, and 10 at the time of his July 17, 2015 sentencing, which mandatorily increased his guidelines minimum range, and that he is therefore entitled to a *Crosby* remand. The prosecution agrees, as do we. Defendant did not preserve this claim of error by raising it in the trial court, see *People v Stokes*, 312 Mich App 181, 198; 877 NW2d 752 (2015), or by filing a motion with this Court seeking a *Crosby* remand, MCR 6.429(C). Therefore, our review is for plain error affecting substantial rights. See *Lockridge*, 498 Mich at 392. "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights." *Id.* at 392-393.

Defendant raised the same issue on the same facts in Docket No. 328710, and we provided the following analysis, which we now adopt for resolution of the issue in this appeal:

> The *Lockridge* Court held that Michigan's sentencing guidelines are "constitutionally deficient" to "the extent [that they] *require* judicial fact-finding beyond the facts admitted by the defendant or found by the jury to score offense

variables that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." *Id*. at 364. Any fact that, by law, increases the penalty for a serious crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. *Alleyne v United States*, 570 US ___; 133 S Ct 2151, 2159-2163; 186 L Ed 2d 314 (2013).

In order to determine whether defendant is entitled to relief under *Lockridge*, we must determine whether facts admitted by defendant or found by the jury were sufficient to access the minimum number of OV points necessary for "defendant's score to fall in the cell of the sentencing grid under which he . . . was sentenced." *Lockridge*, 498 Mich at 394. If they were not, then an "unconstitutional constraint actually impaired the defendant's Sixth Amendment right[,]" *id*. at 395, and the defendant is entitled to have the case "remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error[,]" *id*. at 395-397.

In this case, defendant argues that the trial court incorrectly used judicial fact-finding to score OVs 1, 8, and 10. OV 1 refers to the "aggravated use of a weapon." MCL 777.31. Fifteen points are scored where a "firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon." MCL 777.31(1)(c). A jury found defendant guilty of armed robbery, MCL 750.529, the essential elements of which are "(1) an assault, and (2) a felonious taking of property from the victim's person or presence, while (3) the defendant is armed with a weapon described in the statute[,]" *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993). The elements of armed robbery do not require the jury to find that defendant pointed a firearm at the victim, nor did defendant admit to so doing.[7] See MCL 750.529. Accordingly, OV 1 was scored using judicial fact-finding.

The trial court also scored OV 8 and OV 10 at 15 points each. OV 8 is scored where the victim of a crime was asported, i.e., carried away, or taken captive, MCL 777.38, and is scored at 15 points where a "victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). OV 10 addresses the "exploitation of a vulnerable victim," MCL 777.40, and is scored at 15 points where predatory conduct is involved. The jury did not make either finding.

---

[7] OV 1 also allows a 5-point score if a "weapon was displayed or implied," MCL 777.31(1)(e), but that score is not to be imposed if the offender was convicted of armed robbery, MCL 777.31(2)(e).

If these OVs had not been scored, defendant would have had a total OV score of 35, not 80. The guideline minimum sentencing range for a defendant who is a Class A offender with a total PRV score of 47 and a total OV score of 35 is 81 to 135 months. MCL 777.62. This range is lower than the guideline minimum sentencing range of 135 to 225 months calculated by the trial court using judicial fact-finding. Hence, defendant is entitled to a *Crosby* remand. See *Lockridge*, 498 Mich at 395-399.

Lastly, the prosecution charged defendant with one count of possession of a short-barreled shotgun in each of two separate charging documents that initiated the two lower-court cases at issue here (Case Nos. 15-002170-01-FC and 15-002172-01-FH). One of the charges arose from the armed robbery of Verse (Case No. 15-002170-01-FC), while the other arose from defendant's possession of a short-barreled shotgun when police arrested him in a vacant house on the night of February 20, 2015 (Case No. 15-002172-01 FC). The trial court "merged" these cases for purposes of trial. At trial, however, defendant was charged with only three counts: armed robbery (Count I), possession of a short-barreled shotgun (Count II), and felony-firearm (Count III). Further, the court instructed the jury only on one count of possession of a short-barreled shotgun, the verdict form contained only one count of possession of a short-barreled shotgun, and the jury foreperson referred only to one count of possession of a short-barreled shotgun when delivering the jury's verdict orally, in the courtroom. Although the verdict form listed both of the aforementioned case numbers in its caption, the form provided guilty or not guilty options only for the three counts listed above.[8] Nothing expressly indicated to the jury that, by finding defendant guilty of Count II, it would actually be finding him guilty of two counts of possession of a short-barreled shotgun. The jury convicted defendant of one count of possession of a short-barreled shotgun. Thus, when the trial court sentenced defendant on two counts of possession of a short-barreled shotgun, it sentenced defendant on one count more than had been presented to the jury, and for which the jury had rendered a verdict. Accordingly, we instruct the trial court on remand to issue an amended judgment of sentence by vacating the second count and accompanying sentence for possession of a short-barreled shotgun. We acknowledge that vacating one of defendant's convictions for possession of a short-barreled shotgun will not affect the length of his sentence, given that his sentences on the two possession charges were to run currently. We also acknowledge that neither party raised this issue on appeal. Nevertheless, this Court may, in its discretion and on terms that are just, enter any order that a case may require, MCR 7.216(A)(7), and we believe this correction is necessary to ensure the integrity of the jury's verdict and the trial court's proceedings.

## III. CONCLUSION

We remand the matter so the trial court can vacate one of defendant's convictions for possession of a short-barreled shotgun and issue a corresponding amended judgment of sentence.

---

[8] We also note that what appears to be a copy of the jury's completed and signed verdict form from Case No. 15-002170-01-FC (armed robbery, possession of a short-barreled shotgun, felony-firearm) was placed in the case file for Case No. 17-002172-01-FC (possession of a short-barreled shotgun and felony firearm).

In addition, because defendant has established that his guidelines minimum sentencing range was actually constrained by a violation of the Sixth Amendment and the trial court sentenced him within those guidelines, we order a *Crosby* remand. We affirm in all other respects.

We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Henry William Saad