*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID WILLIAM BERZINSKAS,

Defendant-Appellant.

UNPUBLISHED
August 13, 2020

No. 347436
Wayne Circuit Court
LC No. 18-006753-01FH

Before: FORT HOOD, P.J., and JANSEN and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial conviction of attempted assault with a dangerous weapon, MCL 750.82 (felonious assault). Defendant was sentenced to two years' probation for the attempted felonious assault conviction. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

This case arises out of a physical altercation involving a knife that occurred in Wyandotte, Michigan. On a mid-July 2018 night, a group of approximately six teenage males were riding bicycles in the parking lot of an abandoned post office. Defendant, who was in the vicinity of the post office, approached the group of teenagers and told them to leave the area because, he claimed, they were trespassing. The group complied and rode their bicycles away from the post office, but defendant followed them for several blocks. When the group stopped, defendant rode his bicycle past the group, stopped at the corner, and turned back to approach the group. One of the teenagers, the victim, moved toward defendant as defendant approached the group. As the victim and defendant came within 7 to 8 feet of each other, the two exchanged words. The victim then removed his shirt, and stood with his hands held low in front of his body, but not in fists. The rest of the group remained several feet behind the victim. Defendant pulled out an approximately 4-inch pocketknife, opened it, held it in his right hand, and pointed it at the victim.

Seeing the knife, one of the teenagers ran to a nearby house, where the mother of one of the other teenagers in the group was. The mother, Kelly Fitzsimmons, approached the scene with her dog. Fitzsimmons saw defendant holding a knife, but noted that it appeared to her that

defendant pointed his knife at the ground. When the police arrived, defendant put the knife in his pocket. The witnesses and responding police officers reported that defendant appeared intoxicated during the incident because he was slurring his words and was difficult to understand. When interviewed by police officers at the scene, defendant stated that he left the post office to go to the Gold Star Bar. The exhibits and testimony established that defendant's route to the bar was out of the way and more physically demanding than other, more reasonable routes he could have taken from the post office.

Defendant elected not to testify at his bench trial and defense counsel argued that defendant acted in self-defense. Specifically, defense counsel asserted that defendant did not intend to assault the victim but only acted in response to the group of teenagers coming near him and out of concern for his frail health. In response, the prosecution argued against the self-defense claim because defendant started the fight by intentionally following the group and initiating the altercation. The prosecution also questioned defendant's concern for his alleged fragile health, given defendant was riding his bicycle without a helmet, while intoxicated, and was riding in the opposite direction of his alleged destination.

In making its findings in the course of rendering its verdict, the trial court did not specifically address defendant's self-defense claim. Nevertheless, the trial court found that defendant committed a felonious assault because defendant attempted to make the victim fear an immediate battery and had the ability, or appeared to have the ability, to cause a battery through possession of the knife. In ruling, the trial court highlighted defendant's act of following the group and passing them, but then turning back to approach the group. The trial court also pointed to defendant being "held at bay" by Fitzsimmons's dog and his intoxication at the time of the incident.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support his attempted felonious assault conviction. We disagree.

This Court reviews questions of law, including a claim of insufficient evidence in a bench trial, de novo. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). "The evidence is viewed in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. at 474. A reviewing court " 'must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt.' " *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748, amended 441 Mich 1201 (1992). "Conflicting evidence and disputed facts are to be resolved by the trier of fact. Minimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019) (citations omitted). Finally, as the trier of fact, the trial court is entitled to judge the credibility of the witnesses. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008).

The trial court found defendant guilty of attempted felonious assault. A felonious assault occurs when "a person . . . assaults another person with a gun, revolver, pistol, knife, iron bar,

club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder." MCL 750.82. Thus, "[t]he elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). An assault involves either an attempt "to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). The intent to injure, or to cause a reasonable apprehension of a battery, may be inferred from the defendant's conduct and the circumstances at the time of the incident. *People v Lawton*, 196 Mich App 341, 349; 492 NW2d 810 (1992). Michigan caselaw further defines an "attempt" as "(1) an attempt to commit an offense prohibited by law, and (2) any act towards the commission of the intended offense." *People v Thousand*, 465 Mich 149, 164; 631 NW2d 694 (2001).

The record of this case provides sufficient evidence to establish that defendant attempted to commit a felonious assault. First, there was evidence that defendant possessed a dangerous weapon, with several witnesses testifying that defendant possessed a 4-inch knife, which was corroborated by Officer Cade Barwig's seizure of a 4-inch pocketknife from defendant. A knife is defined as a dangerous weapon under the felonious assault statute. See MCL 750.82(1). This testimony provided sufficient evidence for a rational trier of fact to find that defendant was armed with a dangerous weapon.

Second, there was evidence that defendant attempted to make the victim fear an immediate battery and had, or appeared to have, the ability to cause a battery when he drew and displayed the knife. The intent to cause a reasonable apprehension of an immediate battery may be inferred from the facts and circumstances. *Lawton*, 196 Mich App at 349. The victim and other witnesses testified that defendant followed the group of teenagers for several blocks after demanding they leave public property. After passing the group, defendant turned back, approached the group of teenagers, and pulled out a knife when a verbal altercation ensued. The victim stated that he "backed away" when he saw the knife because he "didn't want to get stabbed." When another of the teenagers saw the knife, he ran to his friend's house to get help.

Regardless of defendant's apparent intoxication at the time of the incident, based on his drawing of the knife, the trial court could permissibly infer that defendant intended to cause the victim to apprehend an immediate battery. Voluntary intoxication is a defense to a crime only if a narrow exception applies. *People v Maynor*, 470 Mich 289, 296; 683 NW2d 565 (2004). The exception applies only to specific intent crimes, and only those in which the defendant can establish "by a preponderance of the evidence, that he or she voluntarily consumed a legally obtained and properly used medication or other substance and did not know and reasonably should not have known that he or she would become intoxicated or impaired." MCL 768.37.

Here, defendant cannot benefit from this defense because he did not assert it at trial, nor could he have met the burden of proof to establish it. As a result, defendant's intent to intimidate was demonstrated when the victim backed away from defendant in the belief that defendant intended to hurt him. That conclusion was based on the trial court's assessment of witness credibility which, as the trier of fact, the trial court was entitled to judge. See *Unger*, 278 Mich App at 232. Further, the trial court reasonably and permissibly inferred from the facts and

circumstances that defendant's conduct was intended to make the victim fear an immediate battery. Thus, there was ample evidence to establish that defendant committed an attempted felonious assault.

## III. SELF-DEFENSE

Defendant argues the trial court failed to consider his self-defense claim. We disagree.

This Court reviews de novo, as a question of law, the availability of a legal defense such as self-defense. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010).

For a bench trial, MCR 6.403 requires that "[t]he court must find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment." Specific factual findings regarding each element of the crime are not required if "the trial court was aware of the issues and correctly applied the law." *People v Legg*, 197 Mich App 131, 134; 494 NW2d 797 (1992). Further, the trial court's failure to point to specific facts for each element of the crime is not required for instances in which "further explication" would not warrant appellate review. *Id*. at 134-135.

To assert a self-defense claim, a defendant must raise the issue and admit that he or she acted intentionally, but argue that his or her actions were justified under the circumstances. *People v Guajardo*, 300 Mich App 26, 43; 832 NW2d 409 (2013). Once a defendant asserts a self-defense claim and "satisfies the initial burden of producing some evidence . . . to establish a prima facie defense," the prosecution has the burden of proving the defendant's lack of justification for self-defense beyond a reasonable doubt. *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (citation and quotation marks omitted). The Self-Defense Act, MCL 780.972, states, in relevant part:

> (2) An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

Furthermore, "a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *Guajardo*, 300 Mich App at 35.

While the trial court did not explicitly address defendant's self-defense claim in its ruling, it is clear from the record that the trial court was aware of the claim and rejected it. For example, defense counsel's opening statement, closing argument, and the prosecution's closing argument explicitly addressed defendant's claim that he acted in self-defense. The trial court also specifically questioned the witnesses about the interaction between defendant and the victim, i.e., the distance between them, the words exchanged, how each individual moved, and the victim's reaction to the knife. Thus, the trial court was aware of defendant's self-defense claim, but rejected it.

Furthermore, the evidence does not support defendant's claim that he acted in self-defense. The victim and other witnesses testified that defendant approached the group of teenagers after demanding the group leave the post office parking lot, and followed them for several blocks. Defendant argues that his poor health, being confronted by the entire group, and the victim's conduct caused him to pull out and display the knife. But defendant's intoxication and initiation of both encounters with the group of teenagers refutes any true concern for his health. Moreover, the evidence shows that defendant was confronted only by the victim, while the rest of the group stood several feet behind the victim. The victim was 16 years old, unarmed, and stood several feet away from defendant at all times. As previously stated, it is the trial court's prerogative to determine the credibility of the witnesses. See *Unger*, 278 Mich App at 232. Thus, the evidence provided a sufficient basis for a rational trial court to implicitly reject defendant's self-defense claim.

## IV. CONCLUSION

For the reasons stated in this opinion, defendant's convictions are affirmed.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Jonathan Tukel