# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JUSTIN MILTON BELL,

        Defendant-Appellant.

UNPUBLISHED
January 26, 2017

No. 328710
Wayne Circuit Court
LC No. 15-002171-01-FC

Before: BECKERING, P.J., and SAWYER and SAAD, JJ.

PER CURIAM.

A jury convicted defendant, Justin Milton Bell, of armed robbery, MCL 750.529, and possession of a firearm while committing a felony (felony-firearm), MCL 750.227b(1). The circuit court sentenced him to a prison term of 18 to 40 years for armed-robbery, and to a consecutive prison term of two years for felony-firearm. Defendant appeals his convictions and sentence by right. For the reasons stated below, we affirm defendant's convictions but remand to the trial court for a *Crosby* procedure.[1]

## I. PERTINENT FACTS

Defendant's convictions stem from a January 24, 2015 armed robbery that occurred on Cortland Street near Kentucky Street in Detroit. The victim, Kenneth Height, testified that he was walking on Cortland Street when a man came out of the alley, approached him from behind, pointed a shotgun at him, and said, "give me all yo' stuff and I'm not gon' kill you." Height responded, "[D]on't kill me. I got a son. Just take everything." Height testified that his assailant replied, "I'm not gon' kill you. I got a son, too. This is just life though."[2] While pointing the gun at his back, Height recounted, his assailant instructed him to walk to the alley and ordered him to lie down. As he lay on the ground, the assailant took his belongings, which

---

[1] *United States v Crosby*, 397 F3d 103 (CA 2, 2005), cert den 549 US 915; 127 S Ct 260; 166 L Ed 2d 202 (2006).

[2] After further questioning by the prosecution, and having his memory refreshed with a copy of his statement to the police, Height recalled telling police that the attacker told him that he had a daughter on the way, not a son.

-1-

included a book bag, cell phone, headphones, and an X-box with controllers and games. Height counted to five before getting up, as instructed by the attacker, and then went home and telephoned the police. Subsequently, two officers went to Height's home and gathered information about the robbery, but police had no suspects.

Detroit Police Department (PD) Officer Brian Gibbings testified that on February 20, 2015, he was patrolling near Wyoming Street and Grand River when he observed defendant in a brown Carhartt jacket with what appeared to be "a long metal object in his left sleeve." Gibbings explained that, as he turned around his patrol vehicle to investigate further, defendant fled. Gibbings and his partner, Detroit PD Officer Michael Bridson, used footprints in the fresh snow to track defendant to a vacant house, where, Gibbings testified, he spotted a sawed-off shotgun that appeared to be wet from being dropped in the snow, and the Carhartt jacket that defendant was observed wearing. A third officer found defendant hiding in a closet. A pat down of defendant revealed that he had in his pockets $16 and a wallet containing identification belonging to Larry Verse. Unbeknownst to the officers at the time, Verse was the victim of an armed robbery that occurred approximately 15 minutes before defendant was apprehended and arrested. According to Detroit PD Sergeant Ernest Wilson, Verse reported that the robbery occurred approximately two blocks from where Height had been robbed.

Detroit PD Lieutenant Tharadrous White and Detective Anthony Smith testified that they interrogated defendant at the Detroit Detention Center during the early morning hours of February 21, 2015. According to the White and Smith, defendant first admitted to committing the February 20, 2015 armed robbery of Verse[3], and then to committing the January 24, 2015 robbery of Height. Defendant's descriptions of the armed robberies were consistent with the victims' descriptions. White and Smith wrote, and defendant signed, statements corresponding to defendant's admissions. To the statement admitting that he committed the armed robbery at issue here, defendant added in his own hand that he "really didn't mean to hurt you [Height] and I would never take you away from your child. I did it to feed my girl." Prior to trial, defendant challenged the voluntariness of both statements. After holding a *Walker*[4] hearing, the trial court determined that defendant made the statements voluntarily and, therefore, that both were admissible at defendant's trials.

---

[3] Defendant was charged separately for the armed robbery of Verse (LC No 15-2170-01-FC), with armed robbery, possessing a short-barreled shotgun, and felony-firearm. The trial court consolidated these charges with a separate charge for possession of a short-barreled shotgun arising from defendant's initial arrest by Gibbings and Bridson (LC No 15-2172-01-FH). Defendant appeals his convictions in LC No 15-2170-01-FC in Docket No. 329070, and the alleged conviction in LC No 15-2172-01-FH in Docket No. 328711. This Court consolidated these appeals for administrative purposes, *People v Bell*, unpublished order of the Court of Appeals, issued February 10, 2016 (Docket Nos. 328711, 329070). They were submitted with the present appeal.

[4] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

As required by MRE 404(b)(2), the prosecution provided defendant with notice of its intent to introduce evidence of the February 20, 2015 robbery of Verse pursuant to MRE 404(b)(1) to show opportunity, intent, scheme, plan or system in doing an act, and identity. The prosecution stressed the similarities between the two armed robberies, while defendant insisted on the generic characteristics of the robberies and the prejudicial effect of admitting the evidence. The trial court originally excluded the evidence, reasoning that its probative value was low relative to its prejudicial effect, given, among other things, that defendant had voluntarily confessed to committing the January 24, 2015 armed robbery. However, explaining that it had acquired a more precise understanding of the evidence available to the prosecution, including the circumstances surrounding defendant's February 20, 2015 arrest that led police to question him regarding the January 24, 2015 armed robbery, the trial court reversed its original decision on the first day of trial. Accordingly, the trial court allowed the prosecution to introduce evidence of the February 20th armed robbery at the trial in this case to show defendant's scheme, plan, or system in committing armed robbery, his identity as the robber in this case, and the unlikelihood of defendant's recently announced assertion, advanced on the eve of trial, that police had fabricated his confession.

Defendant testified at trial, admitting that he possessed a shotgun,[5] but denying that he had used it to rob anyone. He said that he had loaned the shotgun to an unnamed crack addict in exchange for crack cocaine and that the addict had returned the gun to him on February 20, 2015, at which time the addict had also given him $15 and a wallet. Defendant said he was walking home from this exchange when he saw the police and ran. Defendant further testified that he was high when arrested and that the police physically assaulted him. Although he disputed that he gave statements to White and Smith admitting that he had committed two armed robberies, insisting that he was under the influence of drugs and in and out of consciousness when he gave the alleged statements, he acknowledged that the apologetic note appended to his statement in this case was in his handwriting. White and Smith testified at defendant's *Walker* hearing and at trial that defendant did not appear to be injured or confused during the interrogation. They also testified that they thought their interrogation of defendant was being recorded by video and that the recording would be available for at least 30 days. However, any recording made had been deleted by the time they tried to access it just over two weeks later. Consequently, no recording of the interrogation was available for the jury to view. Defendant surmised that the police did not produce the recording because it would show that an officer had threatened him.

II. ANALYSIS

A. MRE 404(B)(1) EVIDENCE

Defendant first argues that the trial court erred in admitting evidence of the February 20, 2015 robbery because the evidence was not offered for a proper purpose and was substantially outweighed by the risk of unfair prejudice. We disagree.

---

[5] The parties later stipulated that the shotgun fulfilled the statutory criteria that make a shotgun "short-barreled." MCL 750.222(*l*).

We review for an abuse of discretion a trial court's decision regarding whether to admit or exclude evidence. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). A trial court abuses its discretion if its decision results in an outcome outside the range of reasoned and principled outcomes. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). We review de novo preliminary questions of law, "such as whether a rule of evidence precludes admission." *Mardlin*, 487 Mich at 614.

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake of accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

For evidence to be admissible under MRE 404(b)(1), the evidence has to be offered for a proper purpose, it must be relevant under MRE 402 as enforced through MRE 104(b), the probative value of the evidence cannot be substantially outweighed by unfair prejudice, and the trial court must give a limiting instruction if so asked. *People v VanderVliet*, 444 Mich 52, 55, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).[6] Evidence is offered for a proper purpose if it is offered for a purpose "under the nonexclusive list in MRE 404(b)(1) or is otherwise probative of a fact other than the defendant's character or criminal propensity." *Mardlin*, 487 Mich at 615. "Evidence is *inadmissible* under this rule only if it is relevant solely to the defendant's character or criminal propensity." *Id*. at 615-616.

To admit evidence of other acts to show a common plan, scheme, or system, the act and the charged crime must be sufficiently similar and have common features that indicate the existence of a plan rather than merely a series of similar, spontaneous acts. *People v Sabin*, 463 Mich 43, 65-66; 614 NW2d 888 (2000). " '[T]he plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense.' " *Id*. at 66, quoting *People v Ewoldt*, 7 Cal 4th 380, 403; 27 Cal Rptr 2d 646; 867 P2d 757 (1994). Where other acts evidence is offered to establish identity through modus operandi, logical relevance can be shown where (1) there is substantial evidence that the defendant committed the other act, (2) the characteristics of the act tend to prove the defendant's identity, (3) the evidence is material to the defendant's guilt, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v Waclawski*, 286 Mich App 634, 673; 780 NW2d 321 (2009) (quotation marks and citation omitted); see also *People v Golochowicz*, 413 Mich 298, 309; 319 NW2d 518 (1982).

After reviewing the record, we conclude that the challenged evidence demonstrates a distinctive common scheme, plan, or system and defendant's identity as the armed robber in the

---

[6] The amendment is not relevant to the instant case.

case at bar. Evidence indicates that both robberies occurred in the same two-block radius. The assailant in each robbery used a shotgun. The assailant approached each victim from behind, apparently attempting to catch the victim by surprise. The assailant in each robbery used a garment to obscure his face. Rather than rob the victim at the scene of his initial approach, the assailant ordered the victim to accompany him to an alley. Once in the alley, rather than robbing the victim at that time, the assailant then ordered the victim to lie on the ground. The assailant in each instance informed the victim that he would not get hurt if he followed the assailant's orders. The assailant then rifled through the victim's possessions and removed all items of value that he found. While some of the acts undertaken are generic to the process of conducting an armed robbery, the consistency of the acts in each, especially the ordering of the victim into an alley and requiring the victim to lie down on the ground before the assailant removes articles of value from the victim, evidence a common scheme or plan. The similarities between the February 20, 2015 armed robbery and the armed robbery at issue led police to suspect that both crimes had been committed by the same person and, after defendant voluntarily admitted committing the February 20, 2015 robbery, to question defendant about the January 24, 2015 armed robbery. Thus, the distinctive common scheme, plan, or system defendant used when committing armed robbery linked defendant to both robberies.

The evidence also established defendant as the armed robber in this case. Police arrested defendant shortly after he had committed the February 20, 2015 robbery, near where the armed robbery occurred, in possession of the same clothes and weapon described by the victim, with the victim's wallet in his pocket, and with the same amount of money the victim said was taken from him. This, along with defendant's voluntary admission that he committed the February 20, 2015 armed robbery provides substantial evidence that he committed the "other act," i.e., the February 20, 2015 armed robbery. *Waclawski*, 286 Mich App at 673. The distinctiveness of the above-described common scheme, plan, or system defendant used to commit the two robberies established defendant as the armed robber in the January 24, 2015 incident, a fact undeniably material to defendant's guilt. *Id*.; see also *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008) (noting, "it is well settled that identity is an element of every offense").

Finally, there is no record evidence that any undue prejudice stemming from the court's decision to admit the evidence of the February 20, 2015 armed robbery substantially outweighed the probative value of the evidence. *Waclawski*, 286 Mich App at 673. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). In this case, evidence of the February 20 robbery was not marginally probative; rather, it was significantly probative of whether defendant had committed the charged armed robbery of Height, particularly since Height had been unable to see the armed robber's face. Additionally, as the trial court pointed out, evidence of defendant's admissible statement confessing that he committed the January 24, 2015 armed robbery significantly lessened the prejudicial effect of the February 20, 2015 evidence. Further, the trial court instructed the jury regarding the proper use of the MRE 404(b) evidence. *Waclawski*, 286 Mich App at 673. The trial court told the jury that it could consider the evidence to determine whether defendant used a common scheme, plan, or system for committing armed robbery, the identity of the armed robber of Height, and whether police fabricated defendant's confession to the crime. The trial court further instructed the jury that it could not use the MRE 404(b) evidence to find that defendant is a bad person or is prone to commit crimes. "It is well established that jurors are presumed to follow their instructions."

*People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). In sum, the MRE 404(b) evidence at issue fulfilled purposes of supplying proof of a common scheme, plan, or system, and identity, and it was relevant and more probative then prejudicial. Therefore, the trial court did not abuse its discretion in admitting the evidence.

## B. JURY INSTRUCTION

Defendant next argues that trial counsel was constitutionally ineffective for failing to ask the trial court to instruct the jury that interrogations for major felonies must be recorded, MCL 763.8, and that jurors could consider the absence of such recording when evaluating the evidence in this case, MCL 763.9. Although we agree with defendant that he was entitled to the jury instruction and that trial counsel's failure to request the instruction constituted performance below an objective standard of reasonableness, we conclude that defendant was not prejudiced by this deficiency.

Whether defendant was entitled to a jury instruction is a question of law that we review de novo. See *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). MCL 763.8 states that a "law enforcement official interrogating an individual in custodial detention regarding the individual's involvement in the commission of a major felony shall make a time-stamped, audiovisual recording of the entire interrogation."[7] Major felonies include felonies that are punishable by imprisonment for life or any term of years. MCL 763.7(d). Failure to record a major-felony interrogation does not preclude a police officer from testifying about the interrogation or the content of a statement. MCL 763.9. However, if the statutorily required recording is not available, "the jury shall be instructed that it is the law of this state to record statements of an individual in custodial detention who is under interrogation for a major felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement." *Id*.

It is undisputed that police interrogated defendant regarding his involvement in the commission of an armed robbery, that armed robbery is a major felony, and that they interrogated defendant in a room properly equipped with the necessary recording system. Consequently, MCL 763.8 was applicable. Therefore, because no recording was available for trial, the trial court should have instructed the jury pursuant to MCL 763.9 that a recording was mandatory and that it may consider the absence of a recording in evaluating the evidence relating to the defendant's statement.

Plaintiff argues that, because police testimony established that the recording equipment was not properly storing videos and that the recording of defendant's interrogation could not be accessed, the recording equipment was not "operational or accessible" as provided in MCL

---

[7] An exception to this requirement occurs when the individual police are interrogating has objected to having the interrogation recorded, and the individual's objection is properly noted. MCL 763.9. This exception does not apply in the instant case.

763.11(3) or (4),[8] and that, consequently, MCL 763.9 did not apply.[9]  We find this argument unpersuasive because it fails to consider the statutory scheme as a whole.  See *Mayor of the City of Lansing v Mich Pub Serv Comm*, 470 Mich 154, 168; 680 NW2d 840 (2004) (noting that a "law is not properly read as a whole when its words and provisions are isolated and given meanings that are independent of the rest of its provisions.").  Read in the context of the statutory scheme as a whole, the reference in MCL 763.8(1) to equipment that is "operational or accessible" clearly indicates equipment procured or possessed within the relevant timeframes, according to the cited conditions.  Once the agency has the mandated equipment, the equipment is operational and accessible for purposes of the statutory scheme, and the agency must follow the relevant provisions.  An agency is not exempt from the requirements of MCL 763.8 simply because its installed equipment later becomes inoperable or the recordings inaccessible.

Because the necessary recording equipment was operational and accessible for purposes of MCL 763.8, the police should have recorded and made available their interrogation of defendant.  In the absence of such a recording, defendant was entitled to the jury instruction mandated by MCL 763.9.  The trial court did not give this instruction, and trial counsel waived the court's error by expressly agreeing to the jury instructions as given.  See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (noting, "[w]hen defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver.").  Defendant claims on appeal that his counsel was ineffective for failing to handle properly the issue of the required jury instruction.

---

[8] MCL 763.11(3) and (4) directs that MCL 763.8 and 763.9, as well as other provisions of the statutory scheme, must be adhered to once the law enforcement agency acquires access to recording equipment, or within certain time periods after receiving funds for recording equipment.  Specifically, the provisions read as follows:

> (3) Except as otherwise provided in subsection (4), law enforcement agencies shall implement [MCL 763.7 through MCL 763.10] and this section within 120 days after receiving funds under this section from the Michigan commission on law enforcement standards or acquiring access to audiovisual recording equipment as directed by the standards set forth by that commission.

> (4) Notwithstanding subsection (3), a law enforcement agency shall comply with the provisions of the amendatory act that added this subsection within 60 days after the date the commission adopts the standards for audiovisual recording equipment required by this section if the law enforcement agency has audiovisual recording equipment that complies with those standards on that date, or within 60 days after the date the law enforcement agency subsequently obtains audiovisual recording equipment that complies with the adopted standards.

[9] MCL 763.8 applies only where "the law enforcement agency has audiovisual equipment that is operational or accessible as provided in section 11(3) or (4) or upon the expiration of the relevant time periods set forth in section 11(3) or (4), whichever occurs first."  MCL 763.8(1).

Because defendant did not raise this issue in the trial court, this Court's review is limited to errors apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). To prevail in his claim of ineffective assistance of counsel, defendant must establish (1) that counsel's performance fell below an objective standard of reasonableness and (2) that the defendant was prejudiced because of counsel's performance. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). A prejudice showing means that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.*, quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052, 2068; 80 L Ed 2d 674 (1984).

By waiving the trial court's error in failing to give the jury instruction to which defendant was entitled under MCL 763.9, and by failing to request an applicable jury instruction that would have allowed the jury to draw a negative inference regarding the police's testimony about defendant's confession, defendant's trial counsel arguably performed below an objective standard of reasonableness. *Vaughn*, 491 Mich at 669. Nevertheless, defendant has not shown that he was prejudiced by this deficiency. *Id.* The record shows that defendant's trial counsel cross-examined several police witnesses extensively regarding their failure to secure a recording of the interrogation, and argued during his closing statement that jurors should view the police account of defendant's alleged confessions skeptically, given the absence of the mandated recording. Further, defendant testified at length to his inability to remember anything about his interrogation other than the means officers used to coerce a confession out of him. Between defendant's testimony and trial counsel's thorough cross-examination of police witnesses, defendant presented the jury with a coherent theory that evidence regarding the statement was unreliable, and that defendant's account of the interrogation was more credible than that of the police officers. Because the issue of the credibility of police accounts of defendant's confession was squarely before the jury, we cannot say that there is a reasonable probability of a different outcome had defendant's trial counsel requested an instruction pursuant to MCL 763.9. *Vaughn*, 491 Mich at 669.

## C. ADJOURNMENT

Defendant next contends that the trial court erred by denying his request to adjourn the trial. We disagree. "[T]o invoke the trial court's discretion to grant a continuance or adjournment, a defendant must show both good cause and diligence." *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). " 'Good cause' factors include 'whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments.' " *Id*, quoting *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992); see also *People v Wilson*, 397 Mich 76, 81; 243 NW2d 257 (1976). In addition, the defendant must demonstrate prejudice because of the trial court's decision. *Coy*, 258 Mich App at 18-19.

We first note that defendant did not specifically move for an adjournment. On the day that jury selection was to have begun, defendant told the court he was not prepared to begin trial because he had "been in a psychiatric ward" for the past five days and, consequently, had been unable to contact his witnesses, and that he had expected the trial court to suppress the statement he made to police admitting his involvement in the armed robbery of Height. Assuming for the sake of argument that defendant's observations constituted a request to adjourn the trial, the trial

court's decision to continue with the trial was not an abuse of discretion. Defendant's disappointed expectation that the trial court would suppress his confession to the charged crime does not constitute good cause for an adjournment, nor does the implication that, although the trial had been scheduled for nearly three months, he waited until the week before trial to line-up his defense witnesses suggest diligence. *Coy*, 258 Mich App at 18.

Even if we determined that defendant's rationale constituted good cause and diligence, defendant has not demonstrated prejudice as a result of the trial court's decision to move forward with the trial. *Id*. at 18-19. Defendant contended in the trial court that his mother and his girlfriend would testify that he was at home during the charged crime. However, trial counsel reported to the court and to defendant that he had spoken with defendant's mother the night before the trial, impressing upon her the importance of appearing and testifying on defendant's behalf, but that on the morning of the trial, the mother left a message saying she was unavailable due to another appointment. Further, counsel explained that he had talked with defendant's mother three or four times and that not once had she indicated that she "was a witness in any form or fashion." Notwithstanding defendant's expectations regarding his mother's testimony, no record evidence indicates that, had the trial court adjourned the trial, the mother would have testified, or that her testimony would have been favorable to defendant. The same is true regarding defendant's girlfriend. Even on appeal, defendant fails to indicate what either witness would have testified about, or how an adjournment would have helped his case. In sum, defendant provides neither evidence nor argument in support of his contention that he was prejudiced by the trial court's decision to move forward with the trial. Absent such showing, defendant cannot prevail on his claim that the trial court abused its discretion by failing to adjourn his trial. *Id*.

### D. USE OF JUDICIAL FACT-FINDING TO SCORE OFFENSE VARIABLES

Finally, defendant asserts that the trial court violated his Sixth Amendment rights by using judicial fact-finding to score offense variables (OVs) 1, 8, and 10 at the time of his July 17, 2015 sentencing, which mandatorily increased his guidelines minimum range, and that he is therefore entitled to a *Crosby* remand. The prosecution agrees, as do we. Defendant did not preserve this claim of error by raising it in the trial court, see *People v Stokes*, 312 Mich App 181, 198; 877 NW2d 752 (2015), or by filing a motion with this Court seeking a *Crosby* remand, MCR 6.429(C). Therefore, our review is for plain error affecting substantial rights. See *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502, lv den sub nom *Michigan v Lockridge*, 577 US ___; 136 S Ct 590; 193 L Ed 2d 487 (2015). "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights." *Id.* at 392-393.

The *Lockridge* Court held that Michigan's sentencing guidelines are "constitutionally deficient" to "the extent [that they] *require* judicial fact-finding beyond the facts admitted by the defendant or found by the jury to score offense variables that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." *Id*. at 364. Any fact that, by law, increases the penalty for a serious crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. *Alleyne v United States*, 570 US ___; 133 S Ct 2151, 2159-2163; 186 L Ed 2d 314 (2013).

In order to determine whether defendant is entitled to relief under *Lockridge*, we must determine whether facts admitted by defendant or found by the jury were sufficient to access the minimum number of OV points necessary for "defendant's score to fall in the cell of the sentencing grid under which he . . . was sentenced." *Lockridge*, 498 Mich at 394. If they were not, then an "unconstitutional constraint actually impaired the defendant's Sixth Amendment right[,]" *id.* at 395, and the defendant is entitled to have the case "remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error[,]" *id.* at 395-397.

In this case, defendant argues that the trial court incorrectly used judicial fact-finding to score OVs 1, 8, and 10. OV 1 refers to the "aggravated use of a weapon." MCL 777.31. Fifteen points are scored where a "firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon." MCL 777.31(1)(c). A jury found defendant guilty of armed robbery, MCL 750.529, the essential elements of which are "(1) an assault, and (2) a felonious taking of property from the victim's person or presence, while (3) the defendant is armed with a weapon described in the statute[,]" *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993). The elements of armed robbery do not require the jury to find that defendant pointed a firearm at the victim, nor did defendant admit to so doing.[10] See MCL 750.529. Accordingly, OV 1 was scored using judicial fact-finding.

The trial court also scored OV 8 and OV 10 at 15 points each. OV 8 is scored where the victim of a crime was asported, i.e., carried away, or taken captive, MCL 777.38, and is scored at 15 points where a "victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). OV 10 addresses the "exploitation of a vulnerable victim," MCL 777.40, and is scored at 15 points where predatory conduct is involved. The jury did not make either finding.

If these OVs had not been scored, defendant would have had a total OV score of 35, not 80. The guideline minimum sentencing range for a defendant who is a Class A offender with a total PRV score of 37 and a total OV score of 35 is 81 to 135 months. MCL 777.62. This range is lower than the guideline minimum sentencing range of 135 to 225 months calculated by the trial court using judicial fact-finding. Hence, defendant is entitled to a *Crosby* remand. See *Lockridge*, 498 Mich at 395-399.

---

[10] OV 1 also allows a 5-point score if a "weapon was displayed or implied," MCL 777.31(1)(e), but that score is not to be imposed if the offender was convicted of armed robbery, MCL 777.31(2)(e). Although neither party references it on appeal, the trial court also used judicially found facts to score OV 2 at 10 points. MCL 777.32(1)(c) ( "[t]he offender possessed or used a short-barreled rifle or a short-barreled shotgun"). The prosecution charged defendant with possession and use of a short-barreled shotgun in the February 20, 2015 armed robbery, but the prosecution did not charge defendant in this case with possession of a short-barreled shotgun.

## III. CONCLUSION

We affirm defendant's convictions. However, because defendant has established that his guidelines minimum sentencing range was actually constrained by a violation of the Sixth Amendment and he was sentenced within those guidelines, we order a *Crosby* remand.

We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Henry William Saad