*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
August 17, 2023

v

No. 361108
Monroe Circuit Court
LC No. 2021-246215-FC

KELVIN LAMONT HARRIS, JR.,

        Defendant-Appellant.

Before: O'BRIEN, P.J., and CAVANAGH and MARKEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of six counts of assault with intent to murder (AWIM), MCL 750.83, one count of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b, one count of being a felon in possession of a firearm (FIPF), MCL 750.224f, and one count of being a felon in possession of ammunition (FIPA), MCL 750.224f(6). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 480 to 680 months' imprisonment for each AWIM conviction, 24 months' imprisonment for felony-firearm, 76 to 480 months' imprisonment for FIPF, and 76 to 480 months' imprisonment for FIPA. Finding no error requiring reversal, we affirm.

## I. BACKGROUND

This case arises from a nonfatal shooting at the intersection of Telegraph and Stewart in Monroe County. According to the prosecution, the impetus for the shooting was a fight involving defendant and codefendant, Jermaine Lamont Brewton, that took place earlier in the evening and was recorded by Alishia Jones. After Jones shared the recording with others, she became fearful for her own safety and for the safety of her children. Jones and several friends then went to Jones's home to take the children to a hotel for the evening.

As they were loading the vehicles, several people noticed a suspicious, dark-colored vehicle circling Jones's apartment complex. Jones left with three of her children, while her four friends and two other children were in another vehicle driven by Alexanderia Alamo-Cruz. When Alamo-Cruz stopped at a traffic light just outside the apartment complex, two people got out of the car behind her, approached her vehicle, and began shooting at it. Alamo-Cruz was shot twice,

once in her head and once in her left shoulder. At trial, she identified defendant and Brewton as the shooters. Alamo-Cruz testified that she saw defendant come to her driver's side door and recognized Brewton's voice when he said, "[C]ome on, bro, let's go."

At the scene of the shooting, the police recovered 11 shell casings, a damaged magazine, and a drop of fresh blood from the roadway. A black Nissan Ultima believed to be used in the shooting was discovered in a nearby mobile home community the next day, containing two additional shell casings, a water bottle with blood on the exterior, a pack of cigarettes, and other evidence. The prosecution presented expert testimony indicating that the 13 shell casings had been shot from two firearms and that the blood found in the roadway and on the water bottle were both consistent with defendant's DNA profile. Defendant's fingerprint was also identified on the broken magazine. In addition to this physical evidence, the prosecution introduced cell phone analysis and mapping evidence suggesting that defendant and Brewton were together throughout the relevant time periods, including at or near the Telegraph and Stewart intersection at the time of the shooting and in or near the mobile home community where the Nissan was recovered shortly thereafter.

## II. CRUEL OR UNUSUAL PUNISHMENT

On appeal, defendant first argues that his 40-year minimum sentences for each AWIM conviction violate the constitutional prohibition against cruel or unusual punishment.[1] We disagree.

Defendant did not preserve this claim of error by raising it before the trial court. See *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). Unpreserved claims of constitutional error are reviewed under the plain-error rule. *Id*. "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). To demonstrate that an error affected substantial rights, the defendant must prove that it impacted the outcome of the proceedings. *Id*. "Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or

---

[1] Defendant also presents a proportionality challenge. Our Supreme Court recently held in *People v Posey*, ___ Mich ___; ___ NW2d ___ (2023) (Docket No. 162373), that within-guidelines sentences are to be reviewed for reasonableness, but it is appropriate to apply a presumption of proportionality though which the defendant bears the burden of demonstrating that his within-guidelines sentence is unreasonable or disproportionate. *Id*.; slip op at 36. Defendant argues here that his within-guidelines sentence is disproportionate because in all likelihood he will not live long enough to have an opportunity for parole. But that does not necessarily render his sentence improper. See *People v Merriweather*, 447 Mich 799, 809-811; 527 NW2d 460 (1994). Defendant's minimum sentence is within his properly scored guidelines range and, for the reasons discussed in Section II of this opinion, he has not overcome his burden of demonstrating that his sentence is unreasonable or disproportionate.

public reputation of judicial proceedings independently of the defendant's innocence." *Id*. (quotation marks and citation omitted).

Because the Michigan Constitution's prohibition against cruel or unusual punishment provides greater protections than its federal counterpart, constitutional challenges to a criminal sentence are resolved using the standards developed by state law. *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). Michigan courts focus on whether the sentence is unjustifiably disproportionate to the offense considering four factors:

> (1) the harshness of the penalty compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed for other offenses in Michigan, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the goal of rehabilitation. [*People v Lymon*, ___ Mich App ___, ____; ___ NW2d ___ (2022) (Docket No. 327355); slip op at 18.]

Relative to the first factor, defendant argues that his 40-year minimum sentences are unusually severe because they constitute de facto life sentences even though his actions did not result in a death. Defendant's sentences are indeed severe, but he fails to fully acknowledge that so too were his actions in this case. Defendant was convicted of six counts of AWIM after firing indiscriminately into a vehicle occupied by four young adults and two minors. The shooting occurred at a busy intersection, where any number of innocent bystanders could have been injured as well. The prosecution presented evidence that the impetus for the shooting was a matter of wounded pride. While there is no "good" reason for such violent conduct, the trivial nature of defendant's motive is especially disturbing. The gravity of his actions is not lessened merely because none of the victims suffered fatal injuries.

Under the second factor, defendant notes that his sentences are substantially higher than the sentences imposed on others convicted of AWIM, as the average sentence for AWIM convicts currently under the jurisdiction of the Michigan Department of Corrections is approximately 18.4 years. Michigan Department of Corrections, *2020 Statistical Report*, p C34, available at <https://www.michigan.gov/-/media/Project/Websites/corrections/postmigration1/LR010322_-_2020_Stat_Report_-_Final_v2.pdf> (accessed June 14, 2023). Defendant's reliance on this statistic is misplaced, as the second factor compares the penalty imposed for the offense to penalties imposed for *other* offenses in Michigan. *Lymon*, ___ Mich App at ___; slip op at 18. Defendant also compares his 40-year sentences to the average 27.1-year sentence for prisoners convicted of second-degree murder. See *2020 Statistical Report*, p C25. This comparison is unpersuasive. While a conviction for second-degree murder can be supported by proof that the defendant had an intent to kill, less culpable states of mind will also suffice. *People v Bailey*, 330 Mich App 41, 48; 944 NW2d 370 (2019) (malice required for second-degree murder includes "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm"). (Citation omitted). AWIM can only be established with proof that the defendant had a specific intent to kill, *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005), making defendant's mens rea here more severe than that of many who commit second-degree murder. Moreover, it is also significant that defendant's recommended minimum-sentence range under the statutory sentencing guidelines was drastically increased by his status as a fourth-offense

habitual offender, MCL 777.21(3)(c), and he could not be sentenced to a term less than 25 years, MCL 769.12(1)(a). See also *Burkett*, 337 Mich App at 642 (concluding that habitual offender sentencing enhancements are not unconstitutional).

Under the third factor, we must compare the penalty imposed in Michigan to those imposed for the same offense elsewhere. *Lymon*, ___ Mich App at ___; slip op at 18. Defendant concedes that sentences of similar lengths are imposed nationwide generally, but does not identify the types of sentences imposed for AWIM specifically in other jurisdictions. As this Court has regularly noted, "[a]n appellant may not simply announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his argument and then search for authority either to sustain or reject his position." *Burkett*, 337 Mich App at 639 n 4 (quotation marks and citation omitted). Defendant has not established a persuasive argument regarding this factor.

Lastly, with respect to the relationship between the sentences imposed and the goal of rehabilitation, *Lymon*, ___ Mich App at ___; slip op at 18, defendant argues that his 40-year sentences effectively preclude him from demonstrating rehabilitation because he is likely to die before reaching parole eligibility. Accepting defendant's contention for the sake of argument, even nonparolable life sentences are not automatically deemed unconstitutional simply because they do not advance the goal of rehabilitation. *People v Fernandez*, 427 Mich 321, 339; 398 NW2d 311 (1986). "Other policies, such as deterrence of others, deterrence of the offender, or punishment of the offender, may suffice to deflect a cruel and unusual punishment challenge." *Id*. Defendant committed grave offenses that require severe punishment. And again, his status as a fourth-offense habitual offender is telling under this factor. Defendant may very well feel little incentive to reform his ways considering the vast length of his minimum sentences, but his extensive criminal history predating these offenses demonstrates that the lesser sentences he served in the past failed to have a lasting reformative effect. Considering the totality of the circumstances, even if we weighed the rehabilitation factor in defendant's favor, he has not established that his 40-year minimum sentences constituted cruel or unusual punishment.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there was insufficient evidence to sustain five of the six AWIM convictions because the prosecution did not prove beyond a reasonable doubt that defendant intended to kill anyone but the driver, Alamo-Cruz. We disagree.

This Court reviews claims of insufficient evidence de novo. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "We review the evidence in the light most favorable to the prosecution and determine whether the jury could have found each element of the charged crime proved beyond a reasonable doubt." *People v Savage*, 327 Mich App 604, 613; 935 NW2d 69 (2019). Given the deferential standard of review, this Court must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

"To prove assault with intent to murder, the prosecution must show (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018) (quotation marks and citation omitted).

As the second element reflects, AWIM is a specific intent crime; that is, the prosecution must prove that the defendant actually intended to kill. *Brown*, 267 Mich App at 147-148.

In advancing this claim of error, defendant emphasizes that the dark tinted windows of Alamo-Cruz's vehicle made it difficult to see inside the vehicle from the outside. He also notes that one of the minor occupants was his own 12-year-old nephew, whom he would have no reason to harm. Defendant's position is unpersuasive.

In *People v Lawton*, 196 Mich App 341, 344-345; 492 NW2d 810 (1992), three defendants came to a home with guns, apparently intending to kill one of the residents, Truman May. May was able to lock the defendants out of the house, so the defendants began shooting into the house from the outside. *Id*. at 345. Unknown to the defendants, May's wife and daughter were also in the house, and the latter was struck after two bullets penetrated the walls. *Id*. The defendants were convicted of several offenses, including three counts of AWIM. *Id*. at 344. One of the defendants argued on appeal that there was insufficient evidence to support the AWIM convictions because he had no intent to kill May's wife or daughter. *Id*. at 350. This Court was unpersuaded and affirmed on the basis of transferred intent, reasoning that the prosecution only had to prove that the defendant had an intent to kill, "not that it be directed at a particular person." *Id*. at 350-351 (quotation marks and citation omitted). See also *People v Abraham*, 256 Mich App 265, 270; 662 NW2d 836 (2003) ("The general intent to kill need not be directed at an identified individual or the eventual victim."). The mere fact that the defendant was unaware two additional victims were present did not render the evidence insufficient to support all three AWIM convictions. *Lawton*, 196 Mich App at 351. By the same reasoning, even if defendant did not know others were in the vehicle with Alamo-Cruz, he could still be convicted of AWIM with respect to each occupant.

Moreover, the prosecution presented evidence from which the jury could conclude that defendant was aware others were in the vehicle, even if he did not know the precise number of occupants or their identities. Alamo-Cruz recalled a suspicious four-door, dark-colored vehicle in the parking lot near Jones's home and opined that the occupants of that vehicle were watching them as they prepared to take Jones's children to a hotel. Jasmyn Webster, the front seat passenger in Alamo-Cruz's vehicle, likewise testified that she saw a black Nissan circling the neighborhood during that time frame, and defendant's nephew indicated that a small car drove by slowly with its headlights off. Viewing the evidence in the light most favorable to the prosecution, a jury could conclude that defendant saw people loading and getting into Alamo-Cruz's car and that he intended to kill the occupants when he followed the vehicle to the main road and began indiscriminately firing at it.

## IV. INEFFECTIVE-ASSISTANCE CLAIMS RAISED BY APPELLATE COUNSEL

In his primary brief on appeal filed by appellate counsel, defendant presents two claims of ineffective assistance of counsel. "The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Although defendant preserved these issues for review by moving to remand to expand the record, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020), this Court denied the motion without prejudice, *People v Harris*, unpublished order of the

Court of Appeals, entered March 9, 2023 (Docket No. 361108). Consequently, our review is limited to errors apparent on the existing record. *Abcumby-Blair*, 335 Mich App at 227.

## A. PRETRIAL PREPARATION

Defendant first argues that a structural error occurred when his newly appointed counsel was forced to proceed to trial within seven weeks of his appointment.[2] We disagree.

Ordinarily, claims of ineffective assistance are analyzed under the two-part test announced in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), which requires the defendant to demonstrate that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. But in *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984), the United States Supreme Court identified three rare circumstances in which the defendant is entitled to a presumption of prejudice. *People v Kammeraad*, 307 Mich App 98, 125; 858 NW2d 490 (2014). Those situations include a denial of counsel at a critical stage of the proceedings, counsel's complete failure to meaningfully challenge the prosecution's case, and "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *People v Frazier*, 478 Mich 231, 243 & n 10; 733 NW2d 713 (2007). Defendant's first ineffective-assistance claim is premised on the last *Cronic* category.

Defendant retained counsel on or about February 25, 2021, before the preliminary examination. The same attorney also represented defendant in a separate drug case. At a pretrial for the instant matter held August 27, 2021, retained counsel noted that he moved to withdraw from the drug case because it was becoming an "unreasonable financial burden." Defendant indicated that he was in agreement and planned to hire another attorney, and the trial court stated that it would allow the withdrawal. The discussion regarding retained counsel's withdrawal was limited to the drug case; there was no mention that counsel wished to withdraw from the instant matter as well. The trial court also scheduled a "firm" trial date in this matter, ordering that trial begin on January 31, 2022.

On December 9, 2021, retained counsel filed a motion to withdraw in this case. At the final pretrial held the next day, retained counsel explained that there had been an extreme breakdown in the attorney-client relationship to the point that he could no longer effectively represent defendant. Defendant agreed that they were "not getting along at all," and expressed his intent to hire a new attorney. The court reminded defendant that the trial date was fast approaching but ultimately concluded that there was enough time remaining to grant retained counsel's motion. The trial court explained that defendant was free to hire an attorney of his choice, but it planned to appoint another attorney in the meantime to make sure the trial could proceed as scheduled. The court also instructed its clerk to ensure that whoever was appointed was prepared to try the case

---

[2] Defendant represents the period between his attorney's appointment and trial as six weeks, but seven weeks elapsed between counsel's appointment on December 13, 2021, and the first day of trial on January 31, 2022.

on January 31, 2022. Defendant maintained that he was not being properly represented by retained counsel and confirmed that he understood that the trial would begin as scheduled. The trial court appointed new counsel on December 13, 2021. Defendant did not ultimately retain a new attorney and, instead, proceeded to trial with appointed counsel seven weeks later.

In *Cronic*, the Supreme Court cited *Powell v Alabama*, 287 US 45; 53 S Ct 55; 77 L Ed 158 (1932), as an example of circumstances in which "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 US at 659-660. In that case, the trial court appointed "all members of the bar" to represent the defendants at an arraignment for a highly publicized capital offense, leaving the question of who would represent the defendants at trial unanswered. *Id*. at 660. An out-of-state lawyer appeared on the day of trial, but explained that he did not have time to learn local procedure and, thus, could not represent the defendants on such short notice. *Id*. Nonetheless, the trial court ordered the out-of-state lawyer to represent the defendants, "with whatever help the local bar could provide." *Id*. Without considering what actually occurred at trial, the *Powell* Court concluded that "the likelihood that counsel could have performed as an effective adversary was so remote as to have made the trial inherently unfair." *Id*. at 660-661. In contrast, the defense attorney in *Avery v Alabama*, 308 US 444; 60 S Ct 321; 84 L Ed 377 (1940), was not presumed ineffective even though he was appointed a mere three days before the defendant was tried for a capital offense. *Cronic*, 466 US at 661. The Court reasoned that "since evidence and witnesses were easily accessible to defense counsel, the circumstances did not make it unreasonable to expect that counsel could adequately prepare for trial during that period of time." *Id*.

While neither of the cases discussed in *Cronic* established a per se rule regarding the length of time required for constitutionally effective trial preparation, it is readily apparent that the circumstances at hand are more analogous to *Avery* than *Powell*. Defendant's appointed counsel has practiced in Monroe County for nearly 20 years and was clearly well versed in state and local law and procedure. Nor has defendant identified any unusual circumstances involved in this case that would require extended preparation after discovery materials had been made available and pretrial motions argued.

Defendant contends that the limited period between the appointment and trial was insufficient for any attorney to "digest the discovery, educate oneself on the science necessary to secure the right expert, obtain funding for said expert, consult with the expert, share the expert's conclusions with their client, and then make reasonable strategic choices about how to present a defense to the state's case." Defendant seems to imply that any time the prosecution proffers technical or expert evidence, defense counsel must consult an independent expert to counter that evidence in order to render effective assistance, but we are aware of no authority supporting that notion. Rather, attorneys are simply required to make objectively reasonable strategic decisions and may choose to forego certain avenues of investigation as long as that decision is supported by reasonable professional judgment. *Trakhtenberg*, 493 Mich at 52.

As an initial matter, our review is limited to the existing record, *Abcumby-Blair*, 335 Mich App at 22, which does not reflect whether defendant's appointed counsel consulted any experts in preparation for the trial. But assuming appointed counsel proceeded without expert consultation or advice as defendant contends on appeal, defendant has not demonstrated that such a decision

would be unreasonable in this case. The type of technical and expert evidence involved was limited to cell phone data and mapping, DNA, latent fingerprints, and ballistics evidence—all common subjects in modern criminal trials. Given appointed counsel's experience, there is no reason to believe he was unequipped to reasonably determine as a matter of strategy how best to rebut the prosecution's evidence. Cf *People v Ackley*, 497 Mich 381, 390-392; 870 NW2d 858 (2015) (concluding that defense counsel did not act reasonably in consulting a single adverse expert when the case involved a controversial medical diagnosis and there was no evidence that counsel had the requisite familiarity with the subject matter to justify limited investigation). There is no indication in the record that appointed counsel thought an expert would be necessary or helpful to the defense or otherwise felt unprepared to make that decision because of the trial date established before his appointment. Considering the totality of the circumstances, we reject defendant's contention that appointed counsel could not have rendered effective assistance merely because he was appointed seven weeks before trial.

## B. RESTITUTION

Defendant also argues that he was denied the effective assistance of counsel when his attorney failed to object to the six-figure restitution amount ordered by the trial court. We disagree.

As noted earlier, a defendant claiming ineffective assistance of counsel must generally demonstrate that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. Under the first prong, the "defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 52. "This standard requires a reviewing court to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *Abcumby-Blair*, 335 Mich App at 237 (quotation marks and citations omitted). Under the second prong, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018) (quotation marks and citation omitted). The defendant also bears the burden of establishing the factual basis for his or her claim. *Id*.

Defendant was ordered to pay $210,000 in restitution. The basis for this amount was not explored at sentencing, but defendant's presentence investigation report (PSIR) recommended the restitution amount on the basis of medical expenses not covered by Alamo-Cruz's insurance policy.

Restitution to a crime victim is called for by the Michigan Constitution and two separate statutes. *People v Spears-Everett*, 329 Mich App 1, 9; 940 NW2d 797 (2019), citing Const 1963, art 1, § 24, MCL 780.751 *et seq*., and MCL 769.1a. Const 1963, art 1, § 24 speaks in general terms, granting crime victims "[t]he right to restitution," while both statutes require sentencing courts to order the defendant to "make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction," MCL 780.766(2); MCL 769.1a(2). In cases involving physical injury, the restitution amount may include the cost of medical care. MCL 780.766(4)(a); MCL 769.1a(4)(a).

Defendant shot Alamo-Cruz in the head, causing catastrophic injuries that required two brain surgeries and approximately five months of hospitalization. That her medical bills were

substantial is not only unsurprising, but entirely expected. But more pertinent to defendant's ineffective-assistance claim, the record suggests that appointed counsel had a sound reason not to challenge the restitution recommendation that was ultimately adopted by the trial court. In the victim impact portion of the PSIR, the author wrote that he spoke with Alamo-Cruz's mother, who reported that Alamo-Cruz's "bills have totaled approximately $490,000 and her insurance has covered $170,000." Yet in the restitution portion of the PSIR, the author identified Alamo-Cruz's medical expenses as "over $400,000, only $190,000 of which have been covered by the insurance policy," thus yielding restitution in the amount of $210,000 "for medical expenses incurred thus far[.]" Given these conflicting figures, appointed counsel could have strategically decided to accept the proposed restitution figure so as not to draw attention to the possibility that Alamo-Cruz actually incurred $320,000 in out-of-pocket medical expenses or risk exposing defendant to additional financial liability if Alamo-Cruz incurred additional expenses after the PSIR was prepared. On this record, defendant cannot overcome the presumption that appointed counsel was acting pursuant to a sound strategy, nor can he establish a reasonable probability that the outcome would have been different but for appointed counsel's failure to object to the restitution amount.

## V. INEFFECTIVE-ASSISTANCE CLAIMS RAISED BY DEFENDANT

Defendant also raises several additional ineffective-assistance theories in his Standard 4 brief. Unlike the claims raised by appellate counsel, defendant did not preserve these alternative arguments for review by filing a remand motion, *Abcumby-Blair*, 335 Mich App at 227, or moving for a new trial or evidentiary hearing below, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "This Court reviews unpreserved claims of ineffective assistance of counsel for errors apparent on the record." *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020).

Defendant's additional ineffective-assistance arguments relate to his originally retained attorney and his subsequently appointed counsel. We will address the former theories first.

Defendant contends that he was denied the effective assistance of counsel when retained counsel failed to consult with DNA or fingerprint experts. Even if we assumed that retained counsel did not consult with DNA or fingerprint experts before the preliminary examination, there is no reason to conclude that such failure fell below an objective standard of reasonableness. Under MCL 766.11b(1)(d), state police laboratory reports may be admitted at a preliminary examination without testimony from the author, notwithstanding the rule against hearsay. *People v Parker*, 319 Mich App 664, 667; 903 NW2d 405 (2017). This is precisely what occurred in this case, with the prosecution introducing DNA and fingerprint evidence through the testimony of two of the investigating detectives. As neither witness was an expert in the relevant scientific fields, cross-examination regarding the underlying scientific findings would have been of no use at the time of the preliminary examination. Considering the procedural context of this argument, it was not objectively unreasonable for retained counsel to proceed without consulting DNA or fingerprint analysis experts. Moreover, as noted in Part IV(A) of this opinion, these types of evidence are commonly presented in modern criminal trials, making it probable that an experienced trial attorney would be able to reasonably review and respond to such evidence without expert consultation.

Next, defendant argues that retained counsel should have objected to Alamo-Cruz's testimony because she was not a competent witness. "Unless the court finds after questioning a

person that the person does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided" by the rules of evidence. MRE 601. Defendant maintains that the prosecution acknowledged Alamo-Cruz's incompetency at the preliminary examination when it questioned whether she was capable of telling the truth. We disagree.

After Alamo-Cruz was sworn in, the district court asked her to repeat her name and spell it for the record. The prosecution interjected that Alamo-Cruz was in speech therapy and explained: "She has some difficulties with certain words and being able—I don't know if she can actually go through the process of that. *I don't know if she can to tell you the truth*." (Emphasis added.) The prosecution then provided the correct spelling, and retained counsel indicated that he had no objection for purposes of the preliminary examination to the court taking judicial notice of the spelling provided by the prosecution. While defendant reads the emphasized comment as questioning whether Alamo-Cruz was capable of telling the truth, it is apparent from the context and specific words used that the prosecution was uncertain whether Alamo-Cruz was able to spell her name for the record. The prosecution did not imply that Alamo-Cruz was incapable of testifying truthfully.

To the extent that defendant relies on inconsistencies in Alamo-Cruz's testimony to establish that she was incompetent to testify, those inconsistencies spoke more to her credibility than her competency as a witness. See, e.g., *People v Breck*, 230 Mich App 450, 457-458; 584 NW2d 602 (1998) (reasoning that witness confusion did not signify incompetency). Moreover, defendant fails to acknowledge that retained counsel did challenge the sufficiency of the preliminary examination evidence by moving to quash the bindover, focusing much of his argument on the incredibility of Alamo-Cruz's conflicting testimony. Defendant has not demonstrated that retained counsel was ineffective as it relates to Alamo-Cruz's testimony.

Defendant next argues that retained counsel did not "conduct adequate pretrial factual investigation, did not timely request appointment of experts or investigators, [and] did not timely file suppression motions related to witness identification testimony." Beyond the points already addressed, defendant does not elaborate on this theory. His failure to articulate specific deficiencies in retained counsel's performance does not adequately present this issue for review. See *Burkett*, 337 Mich App at 639 n 4 ("[A]n appellant may not simply announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his argument and then search for authority either to sustain or reject his position.") (Quotation marks and citation omitted; alteration in original).

Next, defendant argues retained counsel did not turn over any "investigatory information" to appointed counsel, presumably because retained counsel did not consult or hire any investigators or experts. This position is but another way of saying that retained counsel should have engaged in additional pretrial investigation, but again fails to identify what exculpatory evidence these unidentified investigators and experts might have discovered. We reiterate that defendant's perfunctory claim regarding unsatisfactory investigation is abandoned, *id*., and to the extent no such investigative materials were obtained by retained counsel, he could not be ineffective for failing to share nonexistent materials with defendant's newly appointed counsel.

Defendant also argues that retained counsel was ineffective for failing to object to Alamo-Cruz's testimony regarding the gun purportedly used to shoot her when there was no foundation for such evidence. Alamo-Cruz testified at the preliminary examination that she saw defendant holding a gun, which was sufficient foundation for her testimony regarding the gun. See MRE 602 (allowing evidence in the form of a witness's own testimony to establish personal knowledge regarding the subject matter). "Failure to raise a futile objection or advance a meritless argument does not constitute ineffective assistance of counsel." *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021). Moreover, in his closing argument at the preliminary examination, retained counsel cited Alamo-Cruz's confusing and inconsistent testimony regarding a handgun and a "bigger gun," both purportedly wielded by defendant, as an example of why Alamo-Cruz's testimony lacked credibility. Defendant cannot overcome the presumption that retained counsel's handling of this issue was a matter of sound strategy.

Next, defendant argues that he was denied the effective assistance of counsel when the prosecution failed to turn over discovery materials before the preliminary examination and the district court still required the parties to proceed with testimony from Alamo-Cruz. On the second day of the four-day preliminary examination, retained counsel advised the district court that the prosecution had just that morning provided certain outstanding discovery items, such as "videos, 911 calls, [and] things of that nature." Considering the last-minute production, retained counsel asked the court to adjourn the preliminary examination for one week. The prosecution opposed the adjournment, explaining that it made discovery available to the defense as it was received, and all its questioning at the preliminary examination was based on the police reports that had already been produced. The district court determined that a one-week adjournment was appropriate to give retained counsel time to review the new material, but Alamo-Cruz's testimony would still be taken that day pursuant to MCR 6.110(B)(2). There was some discussion of reserving cross-examination for a later date, but the prosecution indicated that it could not guarantee Alamo-Cruz's later availability, as she was going to undergo additional medical procedures in the near future. The district court, therefore, ordered Alamo-Cruz's testimony to be taken in its entirety.

We discern no deficiencies in retained counsel's handling of this issue. He requested an adjournment to review newly provided discovery materials and supported another attorney's suggestion that the parties be permitted to cross-examine Alamo-Cruz after having an opportunity to review the new materials. The district court rejected the suggestion and ordered that her testimony be taken in full. Any further objection by retained counsel would have been futile under these circumstances, and failure to pursue a futile position does not constitute ineffective assistance of counsel. *Isrow*, 339 Mich App at 532.

Defendant's last ineffective assistance theory with respect to retained counsel concerns counsel's handling of a plea offer. According to defendant, the prosecution offered a plea that would require defendant to serve a 22-year sentence, and retained counsel asked the trial court for a *Cobbs*[3] agreement before presenting the offer to defendant. Defendant further contends that the

---

[3] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

trial court denied retained counsel's request, and the prosecution then rescinded the plea offer before defendant had time to consider it.

"As at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014). A claim of ineffective assistance stemming from that process remains governed by the two-part *Strickland* test. *Id*. at 592. "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v Frye*, 566 US 134, 145; 132 S Ct 1399; 182 L Ed 2d 379 (2012). Whether to plead guilty is a decision left to the defendant, after consultation with counsel sufficient to allow the defendant to make an informed decision. *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995). When an attorney allows an "offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." *Frye*, 566 US at 145. In such cases, to satisfy the prejudice prong of the *Strickland* test,

> defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. [*Id*. at 147.]

This portion of defendant's ineffective assistance claim is unsupported by the record. A specific plea offer was not discussed on the record. The only time this issue was at all implicated was at sentencing, when defendant complained that retained counsel told his family about the plea offer but never shared it with him. Defendant has neither presented an offer of proof detailing retained counsel's communications regarding the plea offer nor has defendant demonstrated a reasonable probability that he would have accepted it had retained counsel shared the offer with him. The nature of the purported offer is unclear from the record and the probability that the purported negotiated plea would be neither rejected by the trial court nor withdrawn by the prosecution had it been presented timely is also unclear. But, as admitted by defendant, the trial court was apparently unwilling to accept any agreement involving a reduced sentence[4] and the prosecutor ultimately withdrew the purported plea offer. For these reasons, we reject this ineffective-assistance claim. See *Muhammad*, 326 Mich App at 63.

Turning to defendant's arguments regarding appointed counsel, defendant first takes issue with appointed counsel's failure to move for suppression of Alamo-Cruz's testimony on the basis of her incompetency. This theory lacks merit because there is no reason to believe Alamo-Cruz was not a competent witness. As explained earlier, defendant's assertions regarding Alamo-Cruz's

---

[4] At sentencing the trial court characterized defendant's actions as a "premeditated, cold-blooded assassination" attempt involving a car full of women and children—which was amongst the most despicable criminal actions the court had seen and mandated severe punishment.

competency stems from a mistaken reading of the prosecution's comments at the preliminary examination. The prosecution's comments do not support a conclusion that Alamo-Cruz lacked the capacity or sense of obligation to testify truthfully, MRE 601, so a motion to suppress her testimony on that basis would be meritless. Appointed counsel cannot be deemed ineffective for failing to advance a meritless position. *Isrow*, 339 Mich App at 532.

In a related argument, defendant challenges appointed counsel's failure to object to Alamo-Cruz's identification of defendant and Brewton when she was unable to explain why her trial testimony contradicted certain statements she made at the preliminary examination. But conflicts between a witness's trial testimony and earlier statements are a basis for impeachment, not objection. Appointed counsel did just that at trial and also emphasized Alamo-Cruz's conflicting and incredible testimony during closing arguments. Appointed counsel's performance did not fall below an objective standard of reasonableness.

Next, defendant argues that he was denied effective assistance when appointed counsel failed to cross-examine the prosecution's expert in latent fingerprint analysis. The only evidence offered by the prosecution's expert that implicated defendant was the discovery of defendant's fingerprint on the broken magazine recovered from the crime scene. Defendant has not identified any particular matters that appointed counsel should have explored on cross-examination, nor does he claim there were any defects in the expert's analysis or conclusions. As such, he has not overcome the presumption that appointed counsel acted pursuant to a sound trial strategy. See *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015) ("[D]ecisions regarding . . . how to question witnesses are presumed to be matters of trial strategy.").

Lastly, defendant contends that appointed counsel should have objected to two portions of the prosecution's closing argument. According to defendant, the prosecution presented an objectionable comment in closing argument when it reasoned that the eyewitness testimony, while imperfect, was "corroborated to a large extent by the physical evidence." Defendant argues that this comment was improper because there was no physical evidence to corroborate Alamo-Cruz's testimony that he was holding a large gun with two hands during the shooting. We disagree. The prosecution was not referring to Alamo-Cruz's conflicting testimony regarding the type of gun used, nor did it claim that *all* the eyewitness testimony was supported by physical evidence. In fact, directly after the challenged comment, the prosecution cited an example of the corroborating physical evidence, noting that the presence of defendant's blood in the intersection where the shooting occurred corroborated Alamo-Cruz's testimony that she saw defendant there. There was nothing improper about this comment, as the prosecution is afforded broad discretion to argue reasonable inferences arising from the evidence. *People v Aldrich*, 246 Mich App 101, 112; 631 NW2d 67 (2001). Because the comment was not improper, appointed counsel was not ineffective for failing to object. See *Isrow*, 339 Mich App at 532.

Defendant also argues that appointed counsel should have objected when the prosecution argued that the jury could fairly conclude that the broken magazine found in the street was used in the shooting. Alamo-Cruz testified that defendant shot her while she was stopped at a red light at the intersection. Inasmuch as the broken magazine was found at the scene and defendant's latent fingerprint was detected on the magazine, it would be reasonable to infer that the magazine was used in the shooting. The prosecution's comment was proper, *Aldrich*, 246 Mich App at 112, and

appointed counsel was not ineffective for failing to raise a meritless objection, *Isrow*, 339 Mich App at 532.

## VI. PRELIMINARY EXAMINATION

Lastly, defendant challenges the sufficiency of the evidence at the preliminary examination, reasoning that that the bindover was improperly based on incompetent and incredible testimony. It is well settled that when "a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover." *People v Wilson*, 469 Mich 1018; 677 NW2d 29 (2004). Accord *People v Green*, 313 Mich App 526, 530; 884 NW2d 838 (2015) ("A defendant may not appeal whether the evidence at the preliminary examination was sufficient to warrant a bindover if the defendant was fairly convicted of the crimes at trial.") (Quotation marks and citation omitted). Because defendant's remaining claims of error focus solely on evidentiary deficiencies at the preliminary examination, we decline to decide them on the merits.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Jane E. Markey